## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**TERESA VALDES,**

     Plaintiff,

v.

**BOEHRINGER INGELHEIM
PHARMACEUTICALS, INC., et al.**


     Defendants.

CASE NO. _____

**NOTICE OF REMOVAL**

**DEMAND FOR JURY TRIAL**

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, Boehringer Ingelheim USA Corporation, Pfizer Inc., Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., GlaxoSmithKline LLC, GlaxoSmithKline Holdings (Americas) Inc. (collectively, "Brand Defendants") hereby give notice of removal of this action, *Valdes v. Boehringer Ingelheim Pharmaceuticals, Inc.*, No. 21-21945CA01, from the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida.  This case relates to another matter currently pending in this Court before Judge Rosenberg, In re Zantac MDL, Case No. 9:21-md-2924.  As grounds for removal, the Brand Defendants state as follows:

## PRELIMINARY STATEMENT

1.     This action is one of over a thousand related lawsuits filed against manufacturers of Zantac (ranitidine) relating to cancers allegedly caused by the medication.  On February 6, 2020, the Judicial Panel on Multidistrict Litigation ("JPML") created an MDL in the Southern District of Florida for pretrial coordination of cases like this one—*i.e.*, cases "in which plaintiffs allege

that they developed cancer as a result of N-Nitrosodimethylamine ("NDMA") formed from Zantac." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 437 F. Supp. 3d 1368, 1369 (J.P.M.L. 2020). The JPML found that centralizing these cases for pretrial purposes "will eliminate duplicative discovery; prevent inconsistent rulings . . . and conserve the resources of the parties, their counsel, and the judiciary." *Id.* To date, over 1,900 actions have been transferred to or filed in the Zantac MDL.

2.      On September 27, 2021, Plaintiff Teresa Valdes filed this Complaint in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, against the Brand Defendants, which had manufactured Zantac over various time periods. The thrust of the Complaint—like countless others in the MDL—is that Plaintiff ingested Zantac and, as a result, developed cancer. Compl. ¶¶ 6–10. The Brand Defendants are not citizens of Florida. *See id.* ¶¶ 11–19. A copy of the Complaint is attached as **Exhibit A**.

3.      In addition to the Brand Defendants, referred to in the Complaint as "Manufacturer Defendants," *see id.* ¶¶ 10–11, Plaintiff names as defendants a number of retailers, including CVS Pharmacy, Inc., Walgreen Co., Walmart Inc. f/k/a Wal-Mart Stores, Inc., and Publix Supermarkets, Inc. (collectively, "Retailer Defendants"), *id.* ¶¶ 11–23.

4.      Plaintiff names Publix Supermarkets, Inc. ("Publix"), a Florida-based retailer, in attempt to avoid removal and defeat diversity jurisdiction. As further explained below, Publix is fraudulently joined in this action because (1) the Complaint fails to state a cause of action against Publix and (2) there is no reasonable basis upon which the claim made against Publix was "brought in good faith." *See Katz v. Costa Armatori*, S.p.A., 718 F. Supp. 1508, 1515 (S.D. Fla. 1989) ("The first tenet is a review of the state court complaint to determine whether a cause of action against the nondiverse defendant or defendants exists. If a cause of action is stated, then the court

2

should review the state court record under Fed. R. Civ. P. 11 to assure that the continued action against the nondiverse party was not a sham.").

5.     Plaintiff knows that she has no colorable claim against Publix because, while Plaintiff's own claims were registered in the MDL, the MDL Court held that the same claims against retailers (such as Publix) that Plaintiff asserts in this action are, as a matter of law, preempted by federal law.  Prior to filing this case, Plaintiff joined the "Census Registry" in the Zantac MDL.  Pursuant to an order entered by the MDL Court, by joining the Registry, Plaintiff "commit[ted] to filing any action relating to Zantac or any ranitidine products, if at all, before [the MDL] Court in MDL No. 2924."  *See* Pretrial Order No. 15 ("PTO 15") at 11, *In re Zantac (Ranitidine) Prods. Liab. Litig*., No. 9:20-md-2924 (Apr. 2, 2020), ECF No. 547 (attached as **Exhibit B**).  The only exceptions to the MDL Court's order are cases in which (a) the non-diverse defendants marketed or manufactured the ranitidine product(s) that the plaintiff took and (b) the plaintiffs have good faith claims against non-diverse defendants.  *Id.*  When faced with adverse MDL rulings, Plaintiff filed this action in state court.  Plaintiff names Publix in clear attempt to avoid federal court and the MDL proceeding.  Plaintiff's jurisdictional gamesmanship in naming a defendant that the MDL Court has already dismissed in a new forum underscores that she has no real intention in good faith to prosecute the action against Publix.  *See Chusid v. Swire Pac. Holdings*, 2010 WL 11505092, at *3 (S.D. Fla. July 16, 2010) (finding defendant fraudulent joined where the complaint stated no claim against it and where the "state court dismissed Count X, the only claim against [the fraudulently joined defendant]").  Rather, Plaintiff names Publix as a means to avoid removal to federal court and the unfavorable rulings in the MDL.

6.     Because Publix is fraudulently joined, federal jurisdiction over this action is proper based on complete diversity between Plaintiff and all properly joined defendants.

## **VENUE AND JURISDICTION**

7.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 118(a), 1391, 1441(a), and 1446(a), because the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, where the Complaint was filed, is a state court within the Southern District of Florida.

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a), because (1) there is complete diversity between Plaintiff and the properly joined defendants; (2) the amount in controversy exceeds $75,000, exclusive of interests and costs; and (3) all other requirements for removal have been satisfied.

## **BASIS FOR REMOVAL**

### I.     **THERE IS COMPLETE DIVERSITY BETWEEN PLAINTIFF AND ALL PROPERLY JOINED DEFENDANTS**

9.     There is complete diversity of citizenship here because Plaintiff is a Florida citizen, and all properly joined defendants are citizens of states other than Florida.

10.     Plaintiff alleges that she "is and at all-times . . . was a resident of Miami-Dade County, Florida."  Compl. ¶ 2.  Plaintiff is, therefore, a citizen of Florida.

11.     For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  A limited liability company is a citizen of every state in which its members are citizens.  9 Fla. Pl. & Pr. Forms § 71A:14.

12.     Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Ridgefield, Connecticut.  Compl. ¶ 11.  Defendant Boehringer Ingelheim Pharmaceuticals, Inc. is, therefore, a citizen of Delaware and Connecticut.

13.     Defendant Boehringer Ingelheim Corporation is a corporation organized under the laws of Nevada with its principal place of business in Ridgefield, Connecticut.  *Id.* ¶ 12.  Defendant Boehringer Ingelheim Corporation is, therefore, a citizen of Nevada and Connecticut.

14.     Defendant Boehringer Ingelheim USA Corporation is a corporation organized under the laws of Delaware with its principal place of business in Ridgefield, Connecticut.  *Id.* ¶ 13.  Defendant Boehringer Ingelheim USA Corporation is, therefore, a citizen of Delaware and Connecticut.

15.     Defendant Pfizer Inc. is a corporation organized under the laws of Delaware with its principal place of business in New York, New York.  *Id.* ¶ 14.  Defendant Pfizer Inc. is, therefore, a citizen of Delaware and New York.

16.     Defendant Sanofi-Aventis U.S. LLC is a corporation organized under the laws of Delaware with its principal place of business in Bridgewater, New Jersey.  *Id.* ¶ 15.  Defendant Sanofi-Aventis U.S. LLC Inc. is, therefore, a citizen of Delaware and New Jersey.

17.     Defendant Sanofi US Services Inc. is a corporation organized under the laws of Delaware with its principal place of business in Bridgewater, New Jersey.  *Id.* ¶ 16.  Defendant Sanofi US Services Inc. is, therefore, a citizen of Delaware and New Jersey.

18.     Defendant GlaxoSmithKline LLC is a limited liability company.  *Id.* ¶ 17.  Its sole member is GlaxoSmithKline Holdings (Americas) Inc., a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware.   Defendant GlaxoSmithKline LLC is, therefore, a citizen of Delaware.

19.     Defendant GlaxoSmithKline Holdings (Americas) Inc. is a corporation organized under the laws of Delaware with its principal place of business in Wilmington, Delaware.  *Id.* ¶ 18.  Defendant GlaxoSmithKline Holdings (Americas) Inc. is, therefore, a citizen of Delaware.

20.     Because Plaintiff is a citizen of Florida and the properly joined defendants are citizens of states other than Florida, complete diversity exists between Plaintiff and all properly joined defendants.  *See* 28 U.S.C. §§ 1332, 1441.

## II.     PUBLIX IS FRAUDULENTLY JOINED

21.     Publix is fraudulently joined, and its Florida citizenship should therefore be disregarded when assessing the diversity of citizenship of the parties for removal.[1]

22.     A defendant is fraudulently joined and its presence in the lawsuit ignored for purposes of determining diversity "where the plaintiff adds a defendant for the sole purpose of destroying complete diversity and precluding removal to federal court."  *Chusid*, 2010 WL 11505092, at *3.  "Under the two part test for fraudulent joinder . . ., a plaintiff must first show that there exists a claim against the non-diverse party.  If a claim has been alleged, the court must then verify that this claim is not a sham."  *Id.* (omitting internal citations).  The court examines whether "a reasonable basis for predicting that the state law might impose liability *on the facts involved*."  *Crowe v. Coleman*, 113 F.3d 1536, 1540 (11th Cir. 1997) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. 1981) (emphasis added)).  "[T]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties."  *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005) (quoting *Pacheco de Perez* v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998)).

---

[1] For similar reasons, and as described below, Defendants CVS Pharmacy, Inc., Walgreen Co., and Walmart Inc. f/k/a Wal-Mart Stores, Inc.—who are also retailers of ranitidine—are not properly joined either.  However, because these entities are not diversity-destroying defendants, *see* Compl. ¶¶ 20, 22, there is no need to address whether they are fraudulently joined.

23.     Plaintiff alleges two causes of action against the Brand Defendants: negligence (Count I) and strict products liability (Count II).  Compl. ¶¶ 119–150.  Plaintiff brings one cause of action against Publix and the other Retailer Defendants: strict liability (Count III).  Compl. ¶¶ 151–156.  Plaintiff's single claim against Publix has no chance of success in Florida state court. Publix, as a mere seller of Zantac, cannot unilaterally change an FDA-approved design or label, nor was it required to stop selling Zantac to avoid liability.  Since the only claim against Publix is premised on design and labeling, it is accordingly preempted.  Plaintiff has no good faith basis for naming Publix in this action; rather, Plaintiff's naming Publix is a "sham," and intended to avoid removal to federal court and the MDL Court's PTO 15 after the MDL Court dismissed claims against Publix as preempted.  *See Chusid*, 2010 WL 11505092, at *3 (finding defendant fraudulent joined where the complaint stated no claim against it and where the "state court dismissed Count X, the only claim against [the fraudulently joined defendant").

24.     Because Publix is fraudulently joined, its citizenship is ignored when assessing the diversity of the parties for removal.

**A.     Plaintiff's Claim Against Publix Is Not Colorable.**

25.     Plaintiff's claim against Publix is premised on the design and label of Zantac and, accordingly, is preempted by federal law.  In *PLIVA, Inc. v. Mensing*, the Supreme Court held that claims involving an FDA-approved product are preempted under federal law when a defendant cannot unilaterally satisfy state-law duties without the FDA's prior approval.  564 U.S. 604, 623–24 (2011) ("[W]hen a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which in turn is dependent on the exercise of judgment by a federal agency, that party cannot *independently* satisfy those state duties for pre-emption purposes.") (emphasis added).  In *Mensing*, the Supreme Court announced this preemption principle in the

context of product liability actions against manufacturers of generic drugs. *Id.* at 609. The generic manufacturers argued that, under federal drug regulations, they are "prevented . . . from independently changing their generic drugs' safety labels." *Id*. at 617. Consequently, they asserted, holding them liable under state law for failure to "adequately and safely label their products," would directly conflict with labeling requirements under federal law. *Id*. The Supreme Court agreed: because generic manufacturers are unable to comply with both state and federal law, state failure-to-warn claims against generic drug manufacturers must be preempted. *Id*. at 614, 618–20 ("If the Manufacturers had independently changed their labels to satisfy their state-law duty [to attach a safer label], they would have violated federal law.").

26. In *Mutual Pharmaceutical Co. v. Bartlett*, the Supreme Court extended this rationale to design defect claims against generic manufacturers. 570 U.S. 472 (2013). Because the Federal Food, Drug, and Cosmetic Act requires a generic drug to have the same active ingredients, route of administration, dosage form, and strength as the brand-name drug, the generic manufacturer cannot legally make the drug in another composition. *Id.* at 483–84. It is thus impossible for a generic manufacturer to redesign a drug; the only way for a generic manufacturer to ameliorate the risk otherwise would have been to strengthen the drug's label. *Id.* at 484. However, as *Mensing* made clear, generic manufacturers are foreclosed from making such unilateral labeling changes. 564 U.S. at 614, 618–20. Accordingly, claims against generic drug manufacturers for purported design defects are also preempted. *Bartlett*, 570 U.S. at 480. The Supreme Court further held in *Bartlett* that a defendant "is not required to cease acting altogether in order to avoid liability." 570 U.S. at 488.

27. The same preemption analysis that the Supreme Court articulated in *Mensing* and *Bartlett* bars claims against pharmaceutical retailers that stand even further removed than generic

8

manufacturers from the ability to change FDA-approved drug labeling.  Only the party who submits the New Drug Application ("NDA") to obtain FDA approval to market a drug can seek to change the drug's labeling after initial approval.  21 C.F.R. § 314.71(a); *id.* § 314.70(a)(4) ("The applicant must promptly revise all promotional labeling and advertising to make it consistent with any labeling change implemented . . . .").  Here, Publix is not, and has never been, the NDA holder for Zantac.  Publix has been named solely in its capacity as a retailer that sold FDA-approved ranitidine manufactured by other parties.  *See generally* Compl.  It had no ability to unilaterally change the product's design or label.

28.     Other federal judges, including Judge Robin Rosenberg who oversees the Zantac MDL, have reached this same result, holding that claims against pharmaceutical retailers are preempted because they cannot change FDA-approved product labeling.  In dismissing the claims—including design defect and failure to warn—against the retailer defendants in the Zantac MDL, Judge Rosenberg explained

> [A]ll of the Plaintiffs' state-law claims against the [Retailer] Defendants are based upon ranitidine's allegedly defective design and inadequate labels/warnings.  This Court cannot disregard the holdings in *Bartlett* and *Mensing*.  The Defendants have no ability to alter a label or alter a drug's design; thus, claims against them premised on labeling and design are preempted.  Courts have routinely reached this conclusion over the years since *Bartlett* and *Mensing* were decided, and the Plaintiffs provide no authority to the contrary.

*In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 7864585, at *13 (S.D. Fla. Dec. 31, 2020).  As the MDL Court recognized, many other cases are in accord.  *See, e.g.*, *Smith v. Teva Pharm. USA, Inc.*, 437 F. Supp. 3d 1159, 1167 (S.D. Fla. 2020) ("Fatal to Plaintiff's claims is that [the distributor] Defendant is not Seasonique's NDA holder.  As there was no federally lawful way for Defendant to have altered Seasonique's FDA-approved labels, Plaintiff's claims are preempted."); *Greager v. McNeil-PPC, Inc.*, 414 F. Supp. 3d 1137, 1142 (N.D. Ill. 2019) (dismissing claims against retail seller of OTC drug on pre-emption grounds); *Brazil v. Janssen Research & Dev.*

*LLC*, 196 F. Supp. 3d 1351, 1365 (N.D. Ga. 2016) ("A distributor, even of a brand name drug, has no power to change . . . labeling.  That power lies with the applicant who filed the New Drug Application."); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 181411, at *3 (D.N.J. Jan. 17, 2012) ("As a distributor of Fosamax, Watson has no power to change Fosamax labeling.  That power lies with the applicant who filed the New Drug Application . . . seeking approval to market Fosamax.").

29.      The same result follows here.  Plaintiff's claim against Publix tracks those the MDL Court already found preempted.  The allegations are premised on Publix's sale of Zantac, which was allegedly dangerous because of the drug's design and label.  *See* Compl. ¶¶ 119–156.  But because Publix never held regulatory authority to alter the labeling or formulation of ranitidine, Plaintiff has no colorable claim against Publix.

30.      To the extent Plaintiff alleges that Publix "owed a duty to Teresa Valdes and the general public to sell only products which were reasonably safe for their intended use, and to refrain from selling any product which was unreasonably dangerous," *Id.* at ¶ 152, that claim is also preempted under *Bartlett*, as such a duty could *only* be satisfied if Publix refused to sell Zantac altogether because it was *already* allegedly "unreasonably dangerous and hazardous to the public" by virtue of its design. *Id.*  at ¶ 153.

31.      As the Supreme Court explained in *Bartlett*: "We reject this 'stop-selling' rationale as incompatible with our pre-emption jurisprudence.  Our pre-emption cases presume that an actor seeking to satisfy both his federal- and state-law obligations is not required to cease acting altogether in order to avoid liability."  570 U.S. at 488.  "Indeed," the Court wrote, "if the option of ceasing to act defeated a claim of impossibility, impossibility pre-emption would be 'all but meaningless.'"  *Id.*; *see also Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 478-79 (4th Cir. 2014)

(holding that all state law claims against the non-NDA holder defendant were preempted because it "was not permitted to change its warnings or formulation" so it could not avoid liability for plaintiff's claims "except by leaving the market"); *Brinkley v. Pfizer, Inc.*, 772 F.3d 1133, 1140-41 (8th Cir. 2014) (dismissing plaintiff's state law claims as "preempted by impossibility" because the non-NDA holder could not avoid liability under Missouri law "without changing its product, changing its labeling, or leaving the market"); *Fullington v. Pliva, Inc.*, 2014 WL 806149, at *4 (E.D. Ark. Feb. 28, 2014) (also rejecting plaintiff's argument that "defendants could have refrained from selling [the drug]" based on *Bartlett*).

32.   Applying *Bartlett*, the MDL court held that any allegation that a retailer defendant should be held liable merely for selling Zantac—as Plaintiff alleges here—is preempted. *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2020 WL 7864585, at *13 ("The Plaintiffs do not dispute that the Defendants would be powerless to cure a design defect in a drug, to make changes to the drug's label, or to issue other warnings without FDA approval.  The Defendants would therefore have no recourse to avoid liability except to stop selling the drug altogether.  But one thing that *Bartlett* made clear is that a 'stop selling' theory cannot be the basis on which a state law claim survives pre-emption.").

33.   The MDL Court noted only one *potential* exception to preemption:  that a plaintiff could, in theory, plausibly assert a claim against a retailer by alleging that the specific ranitidine product that a specific plaintiff took had become "overheated" as a result of the specific retailer's negligence in storing and/or transporting the product outside of labeled conditions.  *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2021 WL 3473759, at *2; *see also In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2021 WL 1989987, at *3 (S.D. Fla. Apr. 1, 2021); *In re Zantac (Ranitidine)*

*Prod. Liab. Litig.*, 2021 WL 650608, at *2 (S.D. Fla. Feb. 19, 2021).  But Plaintiff has ***not*** pleaded such a claim against Publix here.

34.     Plaintiff's Complaint includes no allegations of improper storage and transport against any defendant, including Publix, and no allegation that the Zantac she allegedly took had been "overheated" as a result of any specific action of any defendant, including Publix.  In fact, heat is only mentioned twice throughout the entire 156-paragraph Complaint.  Compl. ¶¶ 32, 104.  And these paragraphs merely contain background allegations about the formation of NDMA; they contain no allegations specific to Publix.  That Plaintiff has not pleaded such a claim is obvious from comparison of the MDL Amended Master Personal Injury Complaint (the "AMPIC") and this one.  The MDL AMPIC contained a discrete count with eighteen paragraphs alleging that retailers failed to appropriately store or transport Zantac, and then another sub-count specifically directed to Florida law.   Am. Master Personal Injury Compl. ¶¶ 2207–2224, *In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, ECF No. 2759.  None of those paragraphs are present in this Complaint.

35.     Plaintiff therefore has pleaded no "storage and transport" claim against Publix, let alone a claim that could survive under Florida fact-pleading standards.  *See Horowitz v. Laske*, 855 So. 2d 169, 172–73 (Fla. Dist. Ct. App. 2003) ("Florida is a fact-pleading jurisdiction. . . . Florida's pleading rule forces counsel to recognize the elements of their cause of action and determine whether they have or can develop the facts necessary to support it, which avoids a great deal of wasted expense to the litigants and unnecessary judicial effort."); *see also Jordan v. Nienhuis*, 203 So. 3d 974, 976 (Fla. Dist. Ct. App. 2016) ("general, vague and conclusory statements are insufficient to satisfy the requirement that a pleader allege a short and plain statement of the ultimate facts showing the pleader is entitled to relief" (internal quotation marks omitted)).

36.     Because Plaintiff's strict liability claim against Publix is preempted and has no possibility of success, Publix is fraudulently joined and its citizenship should be disregarded.

**B.      The MDL Court's PTO 15 Precludes Plaintiff from Naming Publix to End-Run Federal Jurisdiction and the MDL Court's Dismissal of Retailer Defendants.**

37.     By voluntarily joining the Census Registry and accepting its benefits, Plaintiff bound herself to the MDL Court's PTO 15, which requires Plaintiff to bring suit, if at all, in the Zantac MDL.   The only exception to this forum selection provision applies to non-diverse defendants (a) that "marketed or manufactured" the ranitidine product(s) that a registry plaintiff actually took and (b) against whom a registry plaintiff has a good faith belief they have valid claims.   Publix does not meet either qualification.   It is not a party that "marketed or manufactured" Zantac.   And Plaintiff has no good faith belief that the claim is valid because the MDL Court has already ruled that the same claims against retailers—including Publix— are invalid as preempted by federal law.

38.     The MDL Court's PTO and subsequent dismissal orders further confirm that Publix is fraudulently joined in this action.   Soon after the MDL was created, the MDL Court established the Census Registry.   The MDL Court explained that the Registry was the result of "good faith" negotiations between the parties and "concessions for the benefit of the litigation as a whole." PTO 15, at 3 (**Ex. B**); *see also id.* at 13 ("The parties have agreed to the creation of the Registry in contemplation of the mutual benefits to Plaintiffs and Defendants alike of robust participation in the Registry.").   Specifically, potential plaintiffs who entered into the Registry received tolling of the statute of limitations for their claims and assistance in collecting documents needed to substantiate their claims.   *Id.* at 11, 14.

39.     In exchange, plaintiffs who entered the Registry ("Registry Claimants"), including Plaintiff Valdes, agreed to a forum selection clause: they "commit[ted] to filing any action relating to Zantac or any ranitidine products, if at all, before [the MDL] Court in MDL No. 2924."  PTO 15, at 11 (**Ex. B**).  This could be accomplished either by filing claims in any federal court and not opposing transfer to the MDL, or by filing claims directly in the MDL.  *See id.*

40.     The plain language of PTO 15 demonstrates that the forum selection clause was a bargained-for promise that Plaintiff cannot unilaterally circumvent by joining non-diverse retailers to escape federal court.  PTO 15's forum selection clause states:

> Claimants who participate in the Registry ***commit to filing any action*** relating to Zantac or any ranitidine products, if at all, ***before this Court in MDL No. 2924***. Claimants within the Registry either ***shall file their complaints in any federal court*** and not oppose transfer to the MDL, ***or may file their complaints directly in the MDL*** pursuant to the as-entered Direct Filing Order (Pretrial Order #11).  Claimants further commit, to the extent that they file an action, to name only those defendants that they have a good faith belief ***marketed or manufactured*** Zantac or ranitidine products that such Claimants ingested or that they ***in good faith*** believe they may have a valid claim against for other reasons.  The requirement to file in federal court shall not be applicable to actions as to which a federal court would lack diversity jurisdiction.

Ex. B at 11-12 (emphasis added).

41.     The first and second sentences of this paragraph could not be clearer:  Registry Claimants "shall" file their lawsuits suit in the MDL.  The third and fourth sentences ("Claimants further commit . . .") effectuate this commitment by limiting the non-diverse defendants that Registry Claimants can name, so that any exceptions would not swallow the rule.  *Id.*

42.     The ***only*** exception to PTO 15's forum selection requirement is for non-diverse defendants that "***marketed or manufactured***" the ranitidine product(s) a Registry Claimant actually took.  *Id.* (emphasis added).  In other words, Registry Claimants are not required to forego claims they may have against any branded or generic manufacturers whose products they took in

14

order to preserve federal jurisdiction and comply with the first sentence of the paragraph.  If a Claimant is, for example, a resident of Delaware, where a manufacturer of the ranitidine she took is incorporated or has its principal place of business, PTO 15 does not require the Claimant to abandon her claims as to that manufacturer and she can sue in state court.

43.     But this plain language does ***not*** allow the naming of a run-of-the-mill retailer that simply stocked ranitidine on its shelves and did not market or manufacture the ranitidine actually ingested by the Registry Claimant—here, Publix—in order to destroy diversity.  Any position to the contrary would render Plaintiff's commitment to file suit in the MDL entirely empty.  *Cf. Robinson v. Ash*, 805 F. App'x 634, 638 (11th Cir. 2020) (rejecting proposed statutory interpretation that would allow the "exception to swallow the rule"); *Silverhorse Racing, LLC v. Ford Motor Co.*, No. 2018 WL 1988863, at *3 (M.D. Fla. Feb. 12, 2018) (same).

44.     Publix falls outside the contemplated forum selection exception for an additional reason: Plaintiff has no good faith basis for her claim against Publix because the MDL Court has dismissed the same claims against retailers like Publix that the Plaintiff asserts now.  *See* Ex. B at 11-12.  After the Registry was created, plaintiffs' leadership counsel in the MDL filed a Master Personal Injury Complaint on June 22, 2020.  The Master Personal Injury Complaint included claims for Strict Products Liability—Design Defect and Strict Products Liability—Failure to Warn, among others.  *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 510 F. Supp. 3d 1324, 1250–51 (S.D. Fla. 2020).  Plaintiff's one claim against Publix in this action is a strict liability claim premised on Publix's sale of Zantac, which was allegedly dangerous because of the drug's design and label.  Compl. ¶¶ 151–163.

45.     On December 31, 2020, after extensive briefing and oral argument, the MDL Court dismissed all personal injury claims against the retailer-defendants as preempted.  *In re Zantac*

*(Ranitidine) Prod. Liab. Litig.*, 510 F. Supp. 3d at 1250–51.  Most claims, including the strict liability claims, were dismissed with prejudice.  The MDL Court granted leave to replead only one substantive count against the retailer-defendants, and then only in part.  Specifically, the MDL Court permitted repleading of a "general negligence" claim based on the storage and/or transport of ranitidine.  *Id.* at 1258.

46.    The MDL plaintiffs' lead counsel filed amended complaints on February 8 and February 22, 2021.  The amended personal injury complaint included a negligent storage and transportation claim against the retailer-defendants.

47.    Following a second round of motions to dismiss, the MDL Court dismissed all claims against the retailer defendants, holding that the plaintiffs' storage and transportation "negligence claim [was] implausibly pled." *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 2021 WL 2685605, at *4 (S.D. Fla. June 30, 2021).

48.    The MDL Court's rulings evidently have caused Plaintiff to change her mind about proceeding in the MDL.  But it is too late for that.  Having voluntarily joined the MDL Registry and accepted its benefits and knowing that PTO 15 required her to commit upfront that she would file any action in the MDL, Plaintiff cannot now simply ignore the MDL Court's orders and her commitment.  Plaintiff's decision to do so—and to allege the very *same* causes of action against the *same* retailer-defendant already dismissed in the MDL—makes clear her attempt to avoid removal and the jurisdiction of the MDL Court.  *In re Zantac (Ranitidine) Prod. Liab. Litig.*, 510 F. Supp. 3d at 1250–51.  This Court has rejected attempts to name non-diverse defendants in similar circumstances—where prior rulings of other courts had dismissed the sole claim later brought against the non-diverse defendant.  *See Chusid*, 2010 WL 11505092, at *3 (finding defendant fraudulently joined where the complaint stated no claim against it and where the "state

court dismissed Count X, the only claim against [the fraudulently joined defendant]"). Because the claim against Publix brought in this action was already dismissed by the MDL Court, "[i]n exercising their 'continuing duty,' [Plaintiff's] counsel has effectively admitted their inability to maintain a plausible claim against [Publix] in good faith." *Id.*

49.     This Court should not accept Plaintiff's efforts to shirk federal jurisdiction and the MDL Court's orders and rulings. Plaintiff's attempt to violate the MDL Court's orders and evade her obligations as a Registry Claimant by naming parties against whom she cannot possibly assert viable claims would render PTO 15 and the MDL Registry meaningless. Moreover, Plaintiff's actions expose the real reason behind naming Publix in this action: to manufacture a lack of diversity and avoid federal court. But Plaintiff's claim against Publix is facially not viable for the same reasons found by the MDL Court. Because Plaintiff has no viable claim against Publix in the forum in which she has agreed to litigate, Publix is fraudulently joined.

**III.     The Amount in Controversy Exceeds $75,000.**

50.     Plaintiff's claim satisfies the amount-in-controversy requirement set forth in 28 U.S.C. § 1332(a).

51.     Where a complaint does not set forth a specific amount of damages, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014)). "The Eleventh Circuit precedent permits district courts to make reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable. Put simply, a district court need not suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount. Instead, courts may use their judicial experience and

17

common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

52.     Courts in the Eleventh Circuit regularly find that the amount in controversy requirement is satisfied where, as here, a plaintiff alleges serious bodily injury and related damages. *See, e.g.*, *Ward v. Bos. Sci. Corp.*, No. CV 18-0435-WS-M, 2018 WL 6696679, at *2 (S.D. Ala. Dec. 19, 2018) (amount in controversy was met where plaintiff alleged "he sustained severe and debilitating injuries resulting from [defendant's recklessness and negligence in designing and distributing a defective medical device], including serious bodily injury and pain and suffering" (internal quotation marks omitted)); *Stavrakis v. Underwriters at Lloyd's London*, 2016 WL 9211676, at *1 (M.D. Fla. Dec. 20, 2016) (amount in controversy was met where the complaint alleged that plaintiff's son was "shot multiple times and sustained serious bodily injury"); *Gates v. 84 Lumber Co.*, 2015 WL 2345427, at *1 (S.D. Ala. May 14, 2015) (inferring that the amount-in-controversy requirement was met when the alleged injury included cancer). Moreover, in another Zantac-related case alleging cancer as an injury, a federal court in the District of Nevada denied a motion to remand where the amount in controversy was not alleged, because the requirement was satisfied on the face of the complaint by the nature of the injury. *See Brooks v. Sanofi, S.A.*, 2020 WL 1847682, at *4 (D. Nev. Apr. 13, 2020).

53.     Here, it is apparent from the face of Complaint that the amount in controversy exceeds $75,000. Plaintiff alleges that her colorectal cancer was "caused by ingesting Zantac." Compl. ¶¶ 7–10. She alleges that "[a]s a direct and proximate result of the conduct of the . . . Defendants, [she] suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn

money, and aggravation of a previously existing condition."  *Id.* ¶ 150; *see also id.* ¶¶ 132, 156.
Plaintiff seeks several categories of damages, including compensatory damages and costs of this
action.  *Id.* at ¶¶ 132, 150, 156 (Prayer for Relief).  It is thus clear that the amount in controversy
exceeds $75,000, exclusive of interest and costs.

IV.     **All Other Removal Requirements Are Satisfied.**

        A.  **This Notice of Removal Is Timely and Properly Filed.**

        54.     The  Notice  of  Removal  is  timely  and  properly  filed  pursuant  to  28  U.S.C.  §
1446(6).

        55.     Plaintiff filed her Complaint in state court on September 27, 2021.  Defendant
Walmart Inc. was served with the Complaint on October 4, 2021.  Defendants Sanofi-Aventis U.S.
LLC and Sanofi US Services Inc. were served with the Complaint on October 6, 2021.  Defendants
Pfizer Inc., GlaxoSmithKline Holdings (America) Inc., CVS Pharmacy, Inc., and Walgreen Co.
were  served  with  the  Complaint  on  October  13,  2021.The  other  properly  joined  defendants—
Boehringer  Ingelheim  Pharmaceuticals,  Inc.;  Boehringer  Ingelheim  Corporation;  Boehringer
Ingelheim USA Corporation; GlaxoSmithKline LLC—have not been served.

        56.     Accordingly, this Notice was filed within 30 days of service as required by 28
U.S.C. § 1446(b).

        57.     Removal pursuant to 28 U.S.C. § 1441(a) requires that "all defendants who have
been properly joined and served must join in or consent to the removal of the action."  28 U.S.C.
§ 1446(b)(2)(A).

        58.     All properly joined and served defendants join in and consent to this removal.  *See*
28 U.S.C. § 1446(b)(2)(A).  Publix is fraudulently joined and therefore not required to consent to
removal.  *See Restivo v. Bank of Am. Corp.*, 618 Fed.Appx. 537, 540 n.5 (11th Cir. 2015); *Diaz v.*

*Kaplan Univ.*, 567 F. Supp. 2d 1394, 1402 (S.D. Fla. 2008).  While it was not properly joined for the same reasons that Publix is not a proper party, Defendants CVS Pharmacy, Inc., Walgreen Co., and Walmart Inc. nonetheless consents to this removal

59.   The Brand Defendants are providing Plaintiff with written notice of the filing of this Notice of Removal as required by 28 U.S.C. § 1446(d).

60.   Pursuant to 28 U.S.C. § 1446(d), the Brand Defendants are filing a copy of this Notice of Removal with the clerk of court in the 11th Judicial Circuit in and for Miami-Dade County, Florida.  A copy of the state court notice is attached hereto as **Exhibit C**.

61.   Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders and other papers filed in the state court action—as available from the state court docket or otherwise made available to the Brand Defendants at the time of filing this Notice—are attached hereto as **Ex. A**.

62.   If any question arises regarding the propriety of the removal to this Court, the Brand Defendants request the opportunity to present a brief and be heard at oral argument in support of removal.

63.   No previous application has been made for the relief requested herein.

**V.   Demand for Jury Trial.**

64.   The Brand Defendants hereby demand a separate jury trial on all claims and issues so triable.

## CONCLUSION

WHEREFORE, the Brand Defendants give notice that the matter bearing Case No. 21-21945CA01, pending in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, is removed to the United States District Court for the Southern District of Florida, and request that this Court retain jurisdiction for all further proceedings in this matter.

Dated this 20 day of October, 2021.                Respectfully submitted,


*/s/ Jay B. Shapiro*
Jay B. Shapiro
STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.
150 West Flagler Street, Suite 2200
Miami, Florida 33130
(305) 789-3229
jshapiro@stearnsweaver.com

M. Elaine Horn (pro hac vice
forthcoming)
Michelle L. Hood (pro hac vice
forthcoming)
WILLIAMS & CONNOLLY LLP
725 12th Street NW
Washington, DC 20005
(202) 434-5000
ehorn@wc.com
mhood@wc.com

*Attorneys for Defendant Pfizer Inc.*


*/s/ Mark F. Raymond*
Mark F. Raymond
NELSON MULLINS RILEY &
SCARBOROUGH LLP
2 South Biscayne Blvd., 21st Floor
Miami, Florida  33131
(305) 373-9425
mark.raymond@nelsonmullins.com

Lindsey B. Cohan
DECHERT LLP
515 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 394-3000
lindsey.cohan@dechert.com

*Attorneys for Defendants*
*GlaxoSmithKline LLC and*
*GlaxoSmithKline Holdings (America)*
*Inc.*


*/s/ Joanne M. O'Connor*
Joanne M. O'Connor
JONES FOSTER P.A.
505 S Flagler Drive Suite 1100
PO Box 3475
West Palm Beach, FL 33402-3475
Tel: (561) 659-3000
Fax:(561) 650-5300
Joconnor@jonesfoster.com

*Attorney for Defendants Sanofi-Aventis*
*U.S. LLC and Sanofi U.S. Services, Inc.*


*/s/ Andrew T. Bayman*
Andrew T. Bayman (pro hac vice
forthcoming)
Robert B. Friedman (pro hac vice
forthcoming)
KING & SPALDING LLP
1180 Peachtree Street, NE, Suite 1600
Atlanta, GA 30309-3521
Telephone: (404) 572-4600
Facsimile: (404) 572-5100
Email: abayman@kslaw.com
Email: rfriedman@kslaw.com

Julia Zousmer (pro hac vice
forthcoming)
KING & SPALDING LLP
110 N Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330
Email: jzousmer@kslaw.com

*Attorneys for Defendants Boehringer*
*Ingelheim Pharmaceuticals, Inc.,*

22

*Boehringer Ingelheim Corporation,
and Boehringer Ingelheim USA
Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2021 I caused a true and correct copy of this Notice of Removal to be served via first-class mail to counsel for Plaintiff at the addresses below. Courtesy copies have also been sent by e-mail to Plaintiff's counsel and counsel for all Defendants:

Justin Parafinczuk, Esq.
Austin Carr, Esq.
**Parafinczuk Wolf**
110 East Broward Boulevard
Suite 1630
Ft. Lauderdale, FL 33301
JParafinczuk@Parawolf.com
ACarr@Parawolf.com

Jason Richards, Esq.
**Alystock, Witkin, Kreis & Overholtz, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
jrichards@awkolaw.com

*Attorneys for Plaintiff Teresa Valdes*

*/s/ Jay B. Shapiro*
Jay B. Shapiro