# Exhibit A



# MIAMI-DADE COUNTY CLERK OF THE COURTS
## HARVEY RUVIN

Contact Us    My Account    

---

# CIVIL, FAMILY AND PROBATE COURTS ONLINE SYSTEM

◄◄ BACK

**TERESA VALDES VS BOEHRINGER INGELHEIM PHARMACEUTICALS ET AL**

| | | | |
|---|---|---|---|
| **Local Case Number:** | 2021-021945-CA-01 | **Filing Date:** | 09/27/2021 |
| **State Case Number:** | 132021CA021945000001 | **Judicial Section:** | CA05 |
| **Consolidated Case No.:** | N/A | **Case Type:** | Product Liability |
| **Case Status:** | OPEN | | |

## 👥 Parties

Total Of Parties: 13 ▬

| Party Description | Party Name | Attorney Information | Other Attorney(S) |
|---|---|---|---|
| Defendant | Boehringer Ingelheim Pharmaceuticals | | |
| Defendant | Boehringer Ingelheim Corporation | | |
| Defendant | Pfizer Inc. | | |
| Defendant | Sanofi-Aventis U.S. LLC | | |
| Defendant | Sanofi US Services Inc. | | |
| Defendant | GlaxoSmithKline LLC | | |
| Defendant | GlaxoSmithKline Holdings (Americas) Inc. | | |
| Defendant | CVS Pharmacy Inc. | | |
| Defendant | Publix Supermarkets, Inc. | | |
| Defendant | Walgreen Co. | | |
| Defendant | Walmart Inc | | |
| Defendant | Boehringer Ingelheim USA Corporation | | |
| Plaintiff | Valdes, Teresa | **B#:  (Bar Number)**440833<br>**N:  (Attorney Name)**Carr, Austin | |

## 🔧 Hearing Details

Total Of Hearings: 0 ➕

## 📶 Dockets

Total Of Dockets: 44 ▬

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 32 | 10/12/2021 | | Service Returned | Event | Parties: Sanofi-Aventis U.S. LLC |
| 📄 | 31 | 10/12/2021 | | Service Returned | Event | Parties: Sanofi US Services Inc. |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | | | | | |
| 📄 | 30 | 10/05/2021 | | Service Returned | Event | Parties: Walmart Inc |
| 📄 | 29 | 10/01/2021 | | Service Returned | Event | Parties: Publix Supermarkets Inc. |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 28 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 14.** Parties: Sanofi-Aventis U.S. LLC |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 27 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 13.** Parties: Sanofi US Services Inc. |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 26 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 9.** Parties: GlaxoSmithKline Holdings (Americas) Inc. |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 25 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 12.** Parties: Boehringer Ingelheim Pharmaceuticals |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 24 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 11.** Parties: Boehringer Ingelheim Corporation |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 23 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 10.** Parties: CVS Pharmacy Inc. |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 22 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 8.** Parties: Walgreen Co. |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 21 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 7.** Parties: GlaxoSmithKline LLC |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 20 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 6.** <br> Parties: Walmart Inc |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 19 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 5.** <br> Parties: Publix Supermarkets Inc. |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 18 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 4.** <br> Parties: Pfizer Inc. |
| | | 09/29/2021 | | 20 Day Summons Issued | Service | |
| 📄 | 17 | 09/29/2021 | | ESummons 20 Day Issued | Event | **RE: INDEX # 3.** <br> Parties: Boehringer Ingelheim Corporation |
| | 16 | 09/29/2021 | | Receipt: | Event | RECEIPT#:3050288 AMT PAID:$120.00 NAME:CARR, AUSTIN 110 E BROWARD BLVD STE 1630 FORT LAUDERDALE FL 33301-3533 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:E-FILING ACH TENDER AMT:$120.00 RECEIPT DATE:09/29/2021 REGISTER#:305 CASHIER:EFILINGUSER |
| | 15 | 09/29/2021 | | Receipt: | Event | RECEIPT#:3050030 AMT PAID:$418.50 NAME:CARR, AUSTIN 110 E BROWARD BLVD STE 1630 FORT LAUDERDALE FL 33301-3533 COMMENT: ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 3102-MULTIPLE DEFENDANT 1 $17.50 $17.50 TENDER TYPE:E-FILING ACH TENDER AMT:$418.50 RECEIPT DATE:09/29/2021 REGISTER#:305 CASHIER:EFILINGUSER |
| 📄 | 14 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 13 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 12 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 11 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| 📄 | 10 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 9 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 8 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 7 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 6 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 5 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 4 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 3 | 09/28/2021 | | (M) 20 Day (C) Summons (Sub) Received | Event | |
| 📄 | 2 | 09/27/2021 | | Complaint | Event | |
| 📄 | 1 | 09/27/2021 | | Civil Cover Sheet - Claim Amount | Event | |

◀◀ BACK

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services. You can review the complete Miami-Dade County Disclaimer.

General

Online Case Home

Civil / Family Courts Information

Login

## Help and Support

Clerk's Home

Privacy Statement

ADA Notice

Disclaimer

Contact Us

About Us



# HARVEY RUVIN

Miami-Dade County
Clerk of the Courts

73 W. Flagler Street
Miami, Florida 33130

305-275-1155

©2021 Clerk of the Courts. All rights reserved.



**FORM 1.997.    CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

### I.    CASE STYLE

IN THE CIRCUIT/COUNTY COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Teresa Valdes</u>
Plaintiff

Case # _____

Judge _____

vs.

<u>Boehringer Ingelheim Pharmaceuticals, Boehringer Ingelheim Corporation, Pfizer Inc., Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., GlaxoSmithKline LLC, GlaxoSmithKline Holdings (Americas) Inc., CVS Pharmacy Inc., Publix Supermarkets, Inc., Walgreen Co., Walmart Inc., Boehringer Ingelheim USA Corporation</u>
Defendant

### II.    AMOUNT OF CLAIM

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

### III.    TYPE OF CASE      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
   ☐ Business governance
   ☐ Business torts
   ☐ Environmental/Toxic tort
   ☐ Third party indemnification
   ☐ Construction defect
   ☐ Mass tort
   ☐ Negligent security
   ☐ Nursing home negligence
   ☐ Premises liability—commercial
   ☐ Premises liability—residential
☒ Products liability
☐ Real Property/Mortgage foreclosure
   ☐ Commercial foreclosure
   ☐ Homestead residential foreclosure
   ☐ Non-homestead residential foreclosure
   ☐ Other real property actions

☐ Professional malpractice
   ☐ Malpractice—business
   ☐ Malpractice—medical
   ☐ Malpractice—other professional
☐ Other
   ☐ Antitrust/Trade regulation
   ☐ Business transactions
   ☐ Constitutional challenge—statute or ordinance
   ☐ Constitutional challenge—proposed amendment
   ☐ Corporate trusts
   ☐ Discrimination—employment or other
   ☐ Insurance claims
   ☐ Intellectual property
   ☐ Libel/Slander
   ☐ Shareholder derivative action
   ☐ Securities litigation
   ☐ Trade secrets
   ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
  ☐ Residential Evictions
  ☐ Non-residential Evictions
☐ Other civil (non-monetary)

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV. REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V. NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

 <u>3</u>

**VI. IS THIS CASE A CLASS ACTION LAWSUIT?**
  ☐ yes
  ☒ no

**VII. HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
  ☒ no
  ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII. IS JURY TRIAL DEMANDED IN COMPLAINT?**
  ☒ yes
  ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Stephen Austin Carr</u>    Fla. Bar # <u>440833</u>
     Attorney or party        (Bar # if attorney)

<u>Stephen Austin Carr </u>      <u>09/27/2021</u>
 (type or print name)       Date

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## COMPLAINT FOR DAMAGES
## AND DEMAND FOR JURY TRIAL

Plaintiff, Teresa Valdes, hereby sues the following defendants: Boehringer Ingelheim

Pharmaceuticals, Inc.; Boehringer Ingelheim Corporation; Boehringer Ingelheim USA Corporation;

Pfizer Inc.; Sanofi-Aventis U.S. LLC; Sanofi US Services Inc.; GlaxoSmithKline LLC;

GlaxoSmithKline Holdings (Americas) Inc.; CVS Pharmacy, Inc..; Publix Super Markets, Inc.; Walgreen

Co.; and, Walmart Inc. f/k/a Wal-Mart Stores, Inc. Plaintiff alleges:

## JURISDICTION AND VENUE

1.      This is an action for damages in excess of $30,000.00, exclusive of interest, costs, and attorneys'

fees.

2.      Plaintiff, Teresa Valdes is and at all-times mentioned herein was a resident of Miami-Dade

County, Florida.

3.      At all relevant times and as further alleged in detail each of the defendants, Boehringer Ingelheim Pharmaceuticals, Inc., Boehringer Ingelheim Corporation, Boehringer Ingelheim USA Corporation, Pfizer Inc., Sanofi-Aventis U.S. LLC, Sanofi US Services Inc., GlaxoSmithKline LLC, and GlaxoSmithKline Holdings (Americas) Inc. (hereinafter collectively referred to as "Manufacturer Defendants"), conducted business within the State of Florida and specifically, Miami-Dade County Florida. Each of the Manufacturer Defendants derived substantial revenue from manufacturing, marketing, handling, distributing, storing, and selling ranitidine-containing products, specifically OTC Zantac, within the State of Florida and specifically, Miami-Dade County, Florida.

4.      At all relevant times and as further alleged in detail each of the defendants, CVS Pharmacy, Inc.., Publix Super Markets, Inc., Walgreen Co., and Walmart Inc. f/k/a Wal-Mart Stores, Inc. (hereinafter collectively referred to as "Retailer Defendants") conducted business within the State of Florida and specifically, Miami-Dade County Florida. Each of the Retailer Defendants derived substantial revenue from marketing, handling, distributing, storing, and selling ranitidine-containing products, specifically OTC Zantac, within the State of Florida and specifically, Miami-Dade County, Florida.

## THE PLAINTIFF'S CLAIM

5.      At all times relevant hereto, the plaintiff, Teresa Valdes, purchased and took the over-the-counter (OTC) medication, brand named Zantac to treat her symptoms of heartburn, acid indigestion, and other gastrointestinal conditions.

6.      Teresa Valdes purchased and took the OTC Zantac from approximately the year 2000 through approximately the year 2019.  Plaintiff purchased the OTC Zantac pills at CVS, Publix, Walgreens and Walmart.

7.      The OTC Zantac purchased by and taken by the plaintiff, Teresa Valdes, contained dangerous levels of the chemical ranitidine and N-Nitrosodimethylamine ("NDMA") and after ingestion some of

the ranitidine created more NDMA in the plaintiff's body. The OTC Zantac purchased and taken by ingestion by Teresa Valdes caused her to develop colorectal cancer.

8.     Plaintiff purchased the OTC Zantac pills she took at CVS, Publix, Walgreens and Walmart in such quantities and with such frequency that the amount of pills that she purchased at each of those four individual Retailer Defendants, was, from each individual retailer, a substantial contributing cause of her colorectal cancer and the injuries alleged herein

9.     Plaintiff purchased and took the OTC Zantac pills manufactured by the Manufacturer Defendants (Boehringer Ingelheim, Pfizer, Sanofi and GlaxoSmithKline) in such quantities and with such frequency that the amount of pills that she purchased and took that were manufactured by each of those individual Manufacturer Defendants was, from each individual manufacturer, a substantial contributing cause of her colorectal cancer and the injuries alleged herein.

10.     The OTC Zantac pills manufactured and sold by the defendants was a direct and legal proximate cause of plaintiff's colorectal cancer and the injuries alleged herein.

## THE MANUFACTURER DEFENDANTS
### Boehringer Ingelheim

11.     Defendant Boehringer Ingelheim Pharmaceuticals, Inc., is a Delaware corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877. Defendant Boehringer Ingelheim Pharmaceuticals, Inc., is a citizen of Delaware and Connecticut.

12.     Defendant Boehringer Ingelheim Corporation is a Nevada corporation with its principal place of business located at 900 Ridgebury Road, Ridgefield, Connecticut 06877. Defendant Boehringer Ingelheim Corporation is a citizen of Nevada and Connecticut.

13.     Defendant Boehringer Ingelheim USA Corporation is a Delaware corporation with its principal place of business located at 900 Ridgebury Rd., Ridgebury, Connecticut 06877. Boehringer Ingelheim USA Corporation is a citizen of Delaware and Connecticut. Collectively, these entities shall be referred to as "Boehringer Ingelheim".

### Pfizer

14.     Defendant Pfizer Inc. ("Pfizer") is a Delaware corporation with its principal place of business located at 235 East 42nd Street, New York, New York 10017. Pfizer Inc. is a citizen of Delaware and New York.

### Sanofi

15.     Defendant Sanofi-Aventis U.S. LLC is a Delaware limited liability company with its principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807. Sanofi-Aventis U.S. LLC's sole member is Sanofi U.S. Services, Inc., a Delaware corporation with its principal place of business in New Jersey. Sanofi-Aventis U.S. LLC is a citizen of Delaware and New Jersey.

16.     Defendant Sanofi US Services Inc. is a Delaware corporation with its principal place of business located at 55 Corporate Drive, Bridgewater, New Jersey 08807. Sanofi US Services Inc. is a citizen of Delaware and New Jersey. Collectively, these entities shall be referred to as "Sanofi."

### GlaxoSmithKline

17.     Defendant GlaxoSmithKline LLC is a Delaware limited liability company with its principal place of business located at Five Crescent Drive, Philadelphia, Pennsylvania, 19112. GlaxoSmithKline LLC's sole member is GlaxoSmithKline Holdings (Americas) Inc., a Delaware corporation with its principal place of business in that state. GlaxoSmithKline LLC is a citizen of Delaware.

18.     Defendant GlaxoSmithKline Holdings (Americas) Inc. is a Delaware corporation with its principal place of business located at 1105 N. Market Street, Suite 622, Wilmington, Delaware 19801. Defendant GlaxoSmithKline Holdings (Americas) Inc. is a citizen of Delaware.

19.     GlaxoSmithKline LLC and GlaxoSmithKline Holdings (Americas) Inc. are subsidiaries of GlaxoSmithKline plc. Collectively, these entities shall be referred to as "GlaxoSmithKline".

## RETAILER DEFENDANTS

### CVS

20.     Defendant CVS Pharmacy, Inc. ("CVS") is a Delaware corporation with its principal place of business located at One CVS Drive, Woonsocket, Rhode Island 02895. Defendant CVS is a citizen of Delaware and Rhode Island.  CVS is the largest pharmacy healthcare provider in the United States. In 2015, CVS Health Corporation acquired Target Corporation's pharmacies and clinics. CVS defined herein includes any current or former Target pharmacy.

### Publix

21.     Defendant Publix Supermarkets, Inc. ("Publix") is a Florida corporation with its principal place of business located at 3300 Publix Corporate Parkway, Lakeland, Florida 33811. Publix is a citizen of Florida.

### Walgreens

22.     Defendant Walgreen Co. ("Walgreens.") is a Delaware corporation with its principal place of business located at 108 Wilmot Road, Deerfield, Illinois 60015. Walgreen Co. is a citizen of Delaware and Illinois.

### Wal-Mart

23.     Defendant Walmart Inc. f/k/a Wal-Mart Stores, Inc. ("Walmart") is a Delaware corporation with its principal place of business located at 702 SW 8th Street, Bentonville, Arkansas 72716. Walmart Inc. is a citizen of Delaware and Arkansas.

## THE DEFENDANTS' NEGLIGENCE
## AND
## THE DEFECTIVE ZANTAC PRODUCT

24.     At all relevant times during which the plaintiff purchased and took OTC Zantac (2000 to 2019), the pills were manufactured and/or distributed and/or sold by one or more of Manufacturer Defendants.

25.     Each of the Manufacturer Defendants owed a duty to the plaintiff and the public in general to assure that OTC Zantac remained safe and free from any defects and/or unreasonable risks of danger to the consumers that would take the OTC Zantac pills.  Each of the Manufacturer Defendants breached that duty to the plaintiff and the public in general.

26.     At all times relevant hereto each of the defendants knew or should have known—as further explained in detail—that OTC Zantac contained the active ingredient ranitidine. A derivative compound of ranitidine is N-Nitrosodimethylamine ("NDMA"), a well-known and dangerous carcinogen. As further explained herein, certain amounts of NDMA are inherent in the manufacture of the OTC Zantac pills and then once ranitidine is ingested, additional NDMA is created in greater amounts and in greater dangerous quantities in the stomach and intestines and in other parts of the human body. Hence OTC Zantac itself is a cancer causing substance when used as intended by consumers such as the plaintiff.

27.     At all relevant times hereto the cancer causing properties of OTC Zantac were unknown by the ordinary consumer and were far beyond the reasonable expectations of the ordinary consumer. OTC Zantac was at all relevant times hereto a defective product.

### AN OVERVIEW OF THE SCIENCE OF
### THE CARCINOGEN, NDMA

28.     Until its recent recall (2019) by the United States Food and Drug Administration (FDA), ranitidine was a popular antacid drug consumed  by millions of people every day. Recent scientific studies, however, confirm what drug companies knew or should have known decades earlier: ingesting ranitidine exposes the consumer to staggering amounts of NDMA.

29.     NDMA is a potent human carcinogen. It was first discovered in the early 1900s as a byproduct of manufacturing rocket fuel. Today, its only use is to induce tumors in animals as part of laboratory experiments. Its only function is to cause cancer. It has no medicinal purpose whatsoever.

30.     NDMA is not akin to other compounds that have a salutary effect at low levels and a negative effect with greater exposure. There is no recommended daily dose of NDMA. The ideal level of exposure

is zero. Nonetheless, the FDA previously set an allowable daily limit of NDMA of 96 nanograms (ng) to minimize the risks posed by this dangerous molecule. Yet a single pill of ranitidine can contain quantities of NDMA that are hundreds of times higher than the allowable limit.

31.     Those recent revelations by the scientific community have caused widespread recalls of ranitidine both domestically and internationally. In fact, after numerous voluntary recalls, on April 1, 2020, the FDA ordered the immediate withdrawal of all ranitidine-containing products sold in the United States, citing unacceptable and unpreventable levels of NDMA accumulation.

32.     The high levels of NDMA observed in ranitidine-containing products is a function of the drug's unstable nature. Ranitidine-containing products generate NDMA as the ranitidine molecule (1) breaks down in the human digestive system; (2) interacts with various enzymes in the human body; (3) reacts over time under normal storage conditions and which increases significantly when exposed to heat; and/or (4) during the manufacturing process. In aggregate, ranitidine-containing products were akin to billions of "Trojan Horses" that smuggled dangerously high levels of NDMA into the bodies of millions of consumers.

## THE DISCOVERY OF RANITIDINE
## AND
## RANITIDINE'S DERIVATIVE CARCINOGEN, NDMA

33.     Zantac was originally created by one of GlaxoSmithKline's predecessor corporations named Allen & Hanburys, Ltd.. In 1976, scientist John Bradshaw, on behalf of GlaxoSmithKline's predecessor Allen & Hanburys Ltd., synthesized and discovered ranitidine.

34.     Allen & Hanburys Ltd., a then-subsidiary of Glaxo Laboratories Ltd., is credited with developing ranitidine and was awarded Patent No. 4,128,658 by the U.S. Patent and Trademark Office in December 1978, which covered the ranitidine molecule.  In 1983, the FDA granted approval to GlaxoSmithKline to sell ranitidine under the brand name "Zantac."

35.     According to the Environmental Protection Agency ("EPA"), "NDMA is a semi volatile organic chemical that forms in both industrial and natural processes." It is one of the simplest members of a class of N-nitrosamines, a family of potent carcinogens. Scientists have long recognized the dangers that NDMA poses to human health. A 1979 news article noted that "NDMA has caused cancer in nearly every laboratory animal tested so far." NDMA is no longer produced or commercially used in the United States except for research. Its only use today is to cause cancer in laboratory animals.

36.     Both the EPA and the International Agency for Research on Cancer ("IARC") classify NDMA as a probable human carcinogen.

37.     The IARC classification is based upon data that demonstrates NDMA "is carcinogenic in all animal species tested: mice, rats, Syrian gold, Chinese and European hamsters, guinea-pigs, rabbits, ducks, mastomys, various fish, newts and frog. It induces benign and malignant tumors following its administration by various routes, including ingestion and inhalation, in various organs in various species." Further, in 1978, IARC stated that NDMA "should be regarded for practical purposes as if it were carcinogenic to humans."

38.     The American Conference of Governmental Industrial Hygienists classifies NDMA as a confirmed animal carcinogen.

39.     The Department of Health and Human Services ("DHHS") states that NDMA is reasonably anticipated to be a human carcinogen. This classification is based upon DHHS's findings that NDMA caused tumors in numerous species of experimental animals, at several different tissue sites, and by several routes of exposure, with tumors occurring primarily in the liver, respiratory tract, kidney, and blood vessels.

40.     The FDA considers NDMA a chemical that "could cause cancer" in humans.

41.     The World Health Organization states that there is "conclusive evidence that NDMA is a potent carcinogen" and that there is "clear evidence of carcinogenicity."

42.     As early as 1980, consumer products containing unsafe levels of NDMA and other nitrosamines have been recalled by manufacturers, either voluntarily or at the direction of the FDA.

43.     The no-observed-adverse-effect level ("NOAEL") is the level of exposure at which there is no biologically significant increase in the frequency or severity of any adverse effects of the chemical. Due to NDMA's ability to affect DNA at a microscopic level, there is no NOAEL for NDMA. This means any amount of NDMA exposure increases risk.

44.     The FDA has set an acceptable daily intake ("ADI") level for NDMA at 96 ng. That means that consumption of 96 ng of NDMA a day would increase the risk of developing cancer by 0.001% over the course of a lifetime. That risk increases as the level of NDMA exposure increases. However, any level above 96 ng is considered unacceptable.

45.     In studies examining carcinogenicity through oral administration, mice exposed to NDMA developed cancer in the kidney, bladder, liver, and lung. In comparable rat studies, cancers were observed in the liver, kidney, pancreas, and lung. In comparable hamster studies, cancers were observed in the liver, pancreas, and stomach. In comparable guinea-pig studies, cancers were observed in the liver and lung. In comparable rabbit studies, cancers were observed in the liver and lung.

46.     In other long-term animal studies in mice and rats utilizing different routes of exposures— inhalation, subcutaneous injection, and intraperitoneal (abdomen injection)—cancer was observed in the lung, liver, kidney, nasal cavity, and stomach.

47.     NDMA is a very small molecule. That allows it to freely pass through all areas of the body, including the blood-brain and placental barrier. This is particularly concerning as ranitidine has been marketed for pregnant women and young children for years.

48.     In addition, NDMA breaks down into various derivative molecules that, themselves, are associated with causing cancer. In animal studies, derivatives of NDMA induced cancer in the stomach and intestine (including colon).

49.     Research shows that lower levels of NDMA, e.g., 40 ng, are fully metabolized in the liver, but high doses enter the body's general circulation.

50.     Exposure to high levels of NDMA has been linked to liver damage in humans.

51.     Numerous in vitro studies confirm that NDMA is a mutagen—causing mutations in human and animal cells.

52.     Overall, the animal data demonstrates that NDMA is carcinogenic in all animal species tested: mice; rats; Syrian golden, Chinese and European hamsters; guinea pigs; rabbits; ducks; mastomys; fish; newts; and frogs.

53.     The EPA classified NDMA as a probable human carcinogen "based on the induction of tumors at multiple sites in different mammal species exposed to NDMA by various routes."

54.     Pursuant to EPA cancer guidelines, "tumors observed in animals are generally assumed to indicate that an agent may produce tumors in humans."

55.     In addition to the overwhelming animal data linking NDMA to cancer, there are numerous human epidemiological studies exploring the effects of dietary exposure to various cancers. And, while these studies consistently show increased risks of various cancers, the exposure levels considered in these studies are a very small fraction of the exposures noted in a single ranitidine capsule.

## A HISTORY OF CORPORATE ACQUISITIONS, AGREEMENTS
### AND
### THE MARKETING OF ZANTAC

56.     In 1983, once the FDA granted approval to GlaxoSmithKline to sell ranitidine under the brand name Zantac, pursuant to the New Drug Application ("NDA") No. 18-703, it quickly became GlaxoSmithKline's most successful product. Indeed, ranitidine became the first prescription drug in history to reach $1 Billion in sales.

57.     To get to that goal, GlaxoSmithKline entered into a joint promotion agreement with Hoffmann-LaRoche, Inc., increasing Zantac's U.S. sales force from 400 people to approximately 1,200. More salespersons drove more sales and more profits for GlaxoSmithKline.

58.     In 1993, GlaxoSmithKline entered into a joint venture with Pfizer-predecessor company Warner-Lambert Co. to develop an OTC version of Zantac. In 1995, the FDA approved OTC Zantac 75 mg tablets through NDA 20-520. In 1998, the FDA approved OTC Zantac 75 mg effervescent tablets through NDA 20-745.

59.     In 1998, GlaxoSmithKline and Warner-Lambert Co. ended their joint venture. As part of the separation, Warner-Lambert Co. retained control over the OTC NDA for Zantac and the Zantac trademark in the United States and Canada but was required to obtain approval from GlaxoSmithKline prior to making any product or trademark improvements or changes. GlaxoSmithKline retained rights to sell OTC Zantac outside of the United States and Canada, and retained control over the Zantac trademark internationally.

60.     GlaxoSmithKline's retention of the right to require GlaxoSmithKline's approval for any product improvements or changes came with an inherent duty on the part of GlaxoSmithKline to assure that OTC Zantac remained safe and free from any defects and/or unreasonable risks of danger to the consumers that would take the OTC Zantac pills.

61.     In 2000, Pfizer acquired Warner-Lambert Co. and thereafter, Pfizer controlled the OTC Zantac NDAs until December 2006.

62.     In October 2000, GlaxoSmithKline sold to Pfizer the full rights to OTC Zantac in the United States and Canada pursuant to a divestiture and transfer agreement. As part of that agreement, GlaxoSmithKline divested all domestic OTC Zantac assets to Pfizer, including all trademark rights. The agreement removed the restrictions on Pfizer's ability to seek product line extensions or the approval for

higher doses of OTC Zantac. GlaxoSmithKline retained the right to exclusive use of the Zantac name for any prescription ranitidine-containing product in the United States.

63.     In October 2003, Pfizer submitted NDA 21-698 for approval to market OTC Zantac 150 mg.  The FDA approved NDA 21-698 on August 31, 2004.

64.     Throughout the time that Pfizer owned the rights to OTC Zantac, GlaxoSmithKline continued to manufacture the product.

65.     In 2006, pursuant to a Stock and Asset Purchase Agreement, Pfizer sold and divested its entire consumer health division (including employees and documents) to Johnson & Johnson ("J&J").  Because of antitrust issues, however, Zantac was transferred to Boehringer Ingelheim.

66.     Pfizer, through a divestiture agreement, transferred all assets pertaining to its OTC Zantac line of products, including the rights to sell and market all formulations of OTC Zantac in the United States and Canada, as well as all intellectual property, R&D, and customer and supply contracts to Boehringer Ingelheim. As part of that deal, Boehringer Ingelheim obtained control and responsibility over all of the OTC Zantac NDAs.

67.     GlaxoSmithKline continued marketing prescription Zantac in the United States until 2017 and still holds the NDAs for several prescription formulations of Zantac. GlaxoSmithKline continued to maintain manufacturing and supply agreements relating to various formulations of both prescription and OTC Zantac.

68.     Boehringer Ingelheim owned and controlled the NDA for OTC Zantac between December 2006 and January 2017, and manufactured, marketed, and distributed the drug in the United States during that period.

69.     In 2017, Boehringer Ingelheim sold the rights of OTC Zantac to Sanofi pursuant to an asset swap agreement. As part of that deal, Sanofi obtained control and responsibility over Boehringer Ingelheim's entire consumer healthcare business, including the OTC Zantac NDAs. As part of this agreement,

Boehringer Ingelheim and Sanofi entered into a manufacturing agreement wherein Boehringer continued to manufacture OTC Zantac for Sanofi. Sanofi has controlled the OTC Zantac NDAs and marketed, sold, and distributed Zantac in the United States from January 2017 until 2019 when it issued a recall and ceased marketing, selling, and distributing OTC Zantac.

70.     Sanofi voluntarily recalled all brand-name OTC Zantac on October 18, 2019.

## ALL THE MANUFACTURER DEFENDANTS KNEW (OR SHOULD HAVE KNOWN) THAT RANITIDINE WOULD CAUSE THE FORMATION OF NDMA

71.     In 1981, Dr. Silvio de Flora, an Italian researcher from the University of Genoa, published the results of experiments he conducted on ranitidine in the well-known journal, The Lancet. When ranitidine was exposed to human gastric fluid in combination with nitrites, his experiment showed "toxic and mutagenic effects." Dr. de Flora hypothesized that these mutagenic effects could have been caused by the "formation of more than one nitroso derivative [which includes NDMA] under our experimental conditions." Dr. de Flora cautioned that, in the context of ranitidine ingestion, "it would seem prudent to … suggest[] a diet low in nitrates and nitrites, by asking patients not to take these at times close to (or with) meals."

72.     GlaxoSmithKline knew of Dr. de Flora's publication because, two weeks later, GlaxoSmithKline responded in The Lancet, claiming that the levels of nitrite needed to induce the production of nitroso derivatives (i.e., NDMA) were not likely to be experienced by people in the real world.

73.     This response reflects GlaxoSmithKline's approach to the scientific evidence on the dangers of Zantac as "adopting the most combative, scorched-earth positions in defense of its brands." The company has no compunctions against distorting objective science to maintain its lucrative monopoly franchises, and its egregious conduct surrounding Zantac is not some isolated incident.

74.     As early as 1981, two years before Zantac entered the market, research showed elevated rates of NDMA, when properly tested.  This was known or should have been known by the Manufacturer

Defendants or any other manufacturer or distributor of ranitidine-containing products as the information was available in medical literature. Such literature should have been accessed by all companies in the chain of distribution of ranitidine, even if it would have been difficult to locate for a regular consumer.

75.     In 1981, GlaxoSmithKline, the originator of the ranitidine molecule, published a study focusing on the metabolites of ranitidine in urine using liquid chromatography. Many metabolites were listed, though there is no indication that the study looked for NDMA.

76.     Indeed, in that same year, Dr. de Flora published a note discussing the results of his experiments showing that ranitidine was turning into mutagenic N-nitroso compounds, of which NDMA is one, in human gastric fluid when accompanied by nitrites—a substance commonly found in food and in the body. GlaxoSmithKline was aware of this study because GlaxoSmithKline specifically responded to the note and attempted to discredit it. The Manufacturer Defendants knew or should have known about this scientific exchange as it was published in a popular scientific journal. The Manufacturer Defendants were obligated to investigate this issue properly. None did.

77.     By 1987, after numerous studies raised concerns over ranitidine and cancerous nitroso compounds, GlaxoSmithKline published a clinical study specifically investigating gastric contents in human patients and N-nitroso compounds. That study specifically indicated that there were no elevated levels of N-nitroso compounds (of which NDMA is one). But the study was rigged. It used an analytical system called a "nitrogen oxide assay" for the determination of N-nitrosamines, which was developed for analyzing food and is a detection method that indirectly and non-specifically measures N-nitrosamines. Not only is that approach not accurate, but GlaxoSmithKline also removed all gastric samples that contained ranitidine out of concern that samples with ranitidine would contain "high concentrations of N-nitroso compounds being recorded." Without the chemical being present in any sample, any degradation into NDMA could not, by design, be observed. The inadequacy of that test was knowable in light of its scientific publication in 1987. All Defendants either knew or should have known

about the inadequacy of that study and should have investigated the issue properly and/or took action to

protect consumers from the NDMA risks in their products. None did.

## GLAXOSMITHKLINE DEBATES THE SCIENCE
## AND
## OBTRUCTS FULL, COMPLETE AND TRUTHFUL
## CONSUMER EXPECTATIONS ABOUT
## THE SAFETY OF RANTITIDINE A/K/A ZANTAC

78.      In its submission to the FDA, GlaxoSmithKline explained that the level of nitrite present would

be unrealistic and, thus, these results had no "practical clinical significance":

> "Although N-nistroso-nitrolic acid was a potent mutagen, it is not likely to be formed in the
> stomach of a patient ingesting ranitidine, as un unrealistically large amount of nitrite needs to be
> present to form and maintain the nitrosamine. For this reason, and also because ranitidine was not
> carcinogenic in life-span studies in rodents, the in vitro nitrosation of ranitidine to a mutagenic
> nitrosamine does not seem to have practical clinical significance."

79.      Around this same time—before Zantac was approved by the FDA— GlaxoSmithKline conducted

another study to examine, among other things, how long-term use of ranitidine could affect the levels of

nitrite in the human stomach. Remarkably, in the study that was presented to the FDA, GlaxoSmithKline

admitted that ranitidine use caused the proliferation of bacteria in the human stomach that are known to

convert nitrates to nitrites, which leads to elevated levels of nitrite in the stomach environment.

GlaxoSmithKline acknowledged this could increase the risk of developing NDMA and, in turn, cancer,

but then dismissed this risk because people were allegedly only expected to use ranitidine-containing

products for a short-term period:

> "The importance of this finding is not clear. High levels of nitrite could react with certain
> organic compounds to form nitrosamines, which are known carcinogens. To date, however,
> neither ranitidine nor cimetidine have been carcinogenic in rodents, so the level of human risk
> cannot be estimated from animal studies. Ranitidine is recommended only for short-term use
> and carcinogenic risk, if any, should thus be minimized."

80.     GlaxoSmithKline knew—and indeed specifically admitted—that ranitidine could react with nitrite in the human stomach to form NDMA and, at the same time, that long-term use of ranitidine could lead to elevated levels of nitrite in the human stomach.

81.     In response to Dr. de Flora's findings, in 1982, GlaxoSmithKline conducted a clinical study specifically investigating gastric contents in human patients. The study, in part, specifically measured the levels of N-Nitroso compounds in human gastric fluid. GlaxoSmithKline indicated that there were no elevated levels, and even published the results of this study five years later, in 1987. That study, however, was also rigged. It did not use gold-standard mass spectrometry to test for NDMA, but instead, used a process that could not measure N-nitrosamines efficiently. And worse, in the testing it did do, GlaxoSmithKline refused to test gastric samples that contained ranitidine in them out of concern that samples with ranitidine would contain "high concentrations of N-nitroso compounds being recorded." In other words, GlaxoSmithKline intentionally rigged the study to exclude the very samples most likely to contain a dangerous carcinogen.

82.     In 1983, the same year Zantac obtained approval from the FDA, seven researchers from the University of Genoa published a study discussing ranitidine and its genotoxic effects (ability to harm DNA). The researchers concluded "it appears that reaction of ranitidine with excess sodium nitrite under acid conditions gives rise to a nitroso-derivative (or derivatives) [like NDMA] capable of inducing DNA damage in mammalian cells."

83.     Then, again in 1983, Dr. de Flora, along with four other researchers, published their complete findings. The results "confirm our preliminary findings on the formation of genotoxic derivatives from nitrite and ranitidine." Again, the authors noted that, "the widespread clinical use [of ranitidine] and the possibility of a long-term maintenance therapy suggest the prudent adoption of some simple measures, such as a diet low in nitrates and nitrites or the prescription of these anti- ulcer drugs at a suitable interval

from meals." This admonition carries weight considering GlaxoSmithKline's studies indicate that long-term ranitidine consumption, itself, leads to elevated levels of nitrites in the human gut.

84.      The high instability of the ranitidine molecule was elucidated in scientific studies investigating ranitidine as a source of NDMA in drinking water and specific mechanisms for the breakdown of ranitidine were proposed. These studies underscore the instability of the NDMA group on the ranitidine molecule and its ability to form NDMA in the environment of water- treatment plants that supply many U.S. cities with water.

85.      In a 1995 epidemiological case-control study looking at NDMA dietary exposure with 220 cases, researchers observed a statistically significant 700% increased risk of gastric cancer in persons exposed to more than 0.51 ng/day. In a 1995 epidemiological case-control study looking at NDMA dietary exposure with 746 cases, researchers observed statistically significant elevated rates of gastric cancer in persons exposed to more than 0.191 ng/day. In another 1995 epidemiological case-control study looking at, in part, the effects of dietary consumption on cancer, researchers observed a statistically significant elevated risk of developing aerodigestive cancer after being exposed to NDMA at .179 ng/day.

86.      In a 1999 epidemiological cohort study looking at NDMA dietary exposure with 189 cases and a follow up of 24 years, researchers noted that "N-nitroso compounds are potent carcinogens" and that dietary exposure to NDMA more than doubled the risk of developing colorectal cancer.

87.      In a 2000 epidemiological cohort study looking at occupational exposure of workers in the rubber industry, researchers observed significant increased risks for NDMA exposure for esophagus, oral cavity, pharynx, prostate, and brain cancer.

88.      In a 2011 epidemiological cohort study looking at NDMA dietary exposure with 3,268 cases and a follow up of 11.4 years, researchers concluded that "[d]ietary NDMA intake was significantly associated with increased cancer risk in men and women" for all cancers, and that "NDMA was associated with increased risk of gastrointestinal cancers" including rectal cancers.

89.     In a 2014 epidemiological case-control study looking at NDMA dietary exposure with 2,481 cases, researchers found a statistically significant elevated association between NDMA exposure and colorectal cancer.

90.     In addition to studies demonstrating that NDMA directly causes cancer, research shows that exposure to NDMA (1) can exacerbate existing but dormant (i.e. not malignant) cancers, (2) promote otherwise "initiated cancer cells" to develop into cancerous tumors; and (3) reduce the ability of the body to combat cancer. Thus, in addition to NDMA being a direct cause of cancer itself, NDMA can also be a contributing factor to a cancer injury caused by some other source.

91.     NDMA is also known to be genotoxic—meaning, it can cause DNA damage in human cells. Indeed, multiple studies demonstrate that NDMA is genotoxic both in vivo and in vitro. However, recent studies have shown that the ability of NDMA to cause mutations in cells is affected by the presence of enzymes typically found in living humans, suggesting that "humans may be especially sensitive to the carcinogenicity of NDMA."

**NDMA BECOMES WIDELY KNOWN**
**AS A PROVEN CAUSE OF CANCER**
**AND**
**ZANTAC IS REMOVED FROM THE MARKET**

92.     In 2016, researchers at Stanford University conducted an experiment on healthy volunteers. The researchers measured the NDMA in urine of healthy individuals over the course of 24 hours, administered one dose of ranitidine, and then measured the NDMA in the urine of the same individuals for another 24 hours. On average, the level of NDMA increased by 400 times, to approximately 47,000 ng. The only change during that 24-hour period was the consumption of ranitidine. This study directly demonstrates that unsafe levels of NDMA are formed in the human body as a result of ranitidine ingestion. The scientists further explained that previous studies have indicated a high metabolic conversion rate of NDMA, meaning it will be processed by the human body. As such the observed 47,000 ng likely only captured 1/100 of the actual NDMA levels in the human body.

93.     On September 9, 2019, pharmacy and testing laboratory Valisure LLC and Valisure RX LLC (collectively, "Valisure") filed a Citizen Petition calling for the recall of all ranitidine-containing products due to exceedingly high levels of NDMA found in ranitidine pills. FDA and European regulators started reviewing the safety of ranitidine with specific focus on the presence of NDMA. This set off a cascade of recalls by the defendants and other sellers of ranitidine products.

94.     On September 13, 2019, the FDA's Director for Drug Evaluation and Research, Dr. Janet Woodcock, issued a statement warning that some ranitidine medicines may contain NDMA.

95.     Beginning in September 2019, various generic manufacturers of ranitidine-containing products began recalling their generic forms of their Zantac equivalent. Some retailers also stopped selling Zantac and other ranitidine-containing products.

96.     On October 2, 2019, the FDA ordered manufacturers of ranitidine to test their products and recommended using a liquid chromatography with high resolution mass spectrometer ("LC-HRMS") testing protocol, which "does not use elevated temperature."

97.     On October 8, 2019, Manufacturer Defendant GlaxoSmithKline voluntarily recalled all ranitidine-containing products internationally. As part of the recall, GlaxoSmithKline publicly acknowledged that unacceptable levels of NDMA were discovered in Zantac and noted that "GlaxoSmithKline  is continuing with investigations into the potential source of the NDMA."

98.     In October 2019 additional generic manufacturers of ranitidine-containing products continued to announce recalls of their Zantac equivalents.

99.     On November 1, 2019, the FDA announced the results of recent testing, finding "unacceptable levels" of NDMA in ranitidine-containing products, and requested that drug makers begin to voluntarily recall their ranitidine-containing products if the FDA or manufacturers discovered NDMA levels above the acceptable limits.

100.    On December 4, 2019, the FDA issued a statement notifying consumers who wished to continue taking ranitidine to consider limiting their intake of nitrite-containing foods, e.g., processed meats and preservatives like sodium nitrite.  This advice mirrored an admonition issued by Italian scientists in 1981 after finding that ranitidine reacted with nitrites in vitro to form toxic and mutagenic effects in bacteria. The prudent advice of Dr. de Flora published in October.1981 in The Lancet was to "avoid nitrosation as far as possible by, for example, suggesting a diet low in nitrates and nitrites, by asking patients not to take these at times close to (or with) meals or by giving inhibitors of nitrosation such as ascorbic acid."

101.    If GlaxoSmithKline had only heeded Dr. de Flora's advice in 1981, millions of people might have avoided exposure to a known carcinogen and increased risk of developing cancer from ingesting ranitidine.

102.    Between November 1, 2019 and February 27, 2020, more generic manufacturers continued to recall ranitidine-containing products.

103.    On January 2, 2020, research laboratory, Emery Pharma, submitted a Citizen Petition to the FDA, showing that NDMA accumulates in ranitidine at unsafe rates when exposed to label-compliant temperature ranges that would occur during normal transport and storage conditions.

104.    Emery's Citizen Petition outlined its substantial concern that ranitidine is a time—and—temperature—sensitive pharmaceutical product that develops NDMA when exposed to heat, a common occurrence during shipping, handling, and storage. In addition to warning about this condition, Emery requested agency directives to manufacturers and distributors to ship ranitidine in temperature-controlled vehicles.

105.    In response, on April 1, 2020, the FDA recounted that a recall is an "effective methods [sic.] of removing or correcting defective FDA-regulated products . . . particularly when those products present a danger to health." The FDA sought the voluntary consent of manufacturers to accept the recall "to protect the public health from products that present a risk of injury." The FDA found that the recall of all

ranitidine-containing products and a public warning of the recall was necessary because the "product being recalled presents a serious health risk." The FDA therefore sent Information Requests to all applicants and pending applicants of ranitidine-containing products "requesting a market withdrawal."

106.    The FDA found its stability testing raised concerns that NDMA levels in some ranitidine-containing products stored at room temperature can increase with time to unacceptable levels. In the same vein, FDA testing revealed NDMA levels were higher as the products approached their expiration dates. The FDA's testing eroded the agency's confidence that any ranitidine-containing product could remain stable through its labeled expiration date. Consequently, the FDA withdrew the products from the market. The FDA's decision to withdraw the drug rendered moot Emery's request for temperature-controlled shipping conditions.

107.    The FDA's reaction was consistent with comparable regulatory action throughout the world. Before the FDA acted, over 43 different countries and jurisdictions restricted or banned ranitidine-containing products.  The European Medicines Agency ("EMA"), the European Union's equivalent to the FDA, through an Article 31 Referral, determined the sale of all ranitidine-containing products should be suspended on September 19, 2019. On April 30, 2020, the Human Medicines Committee of the EMA "has recommended the suspension of all ranitidine medicines in the EU due to the presence of low levels of an impurity called N-nitrosodimethylamine (NDMA)." The EMA recognizes NDMA as a probable human carcinogen and issued a "precautionary suspension of these medicines in the EU" because "NDMA has been found in several ranitidine medicines above levels considered acceptable, and there are unresolved questions about the source of the impurities."

108.    The ranitidine molecule itself contains the constituent molecules to form NDMA.

109.    Specifically, the O=N (Nitroso) on one side of the ranitidine molecule can combine with the H3C-N-CH3 (DMA) on the other side of the molecule to form NDMA.

110.    The formation of NDMA by the reaction of DMA and a nitroso source (such as a nitrite) is well characterized in the scientific literature and has been identified as a concern for contamination of the U.S. water supply. Indeed, in 2003, alarming levels of NDMA in drinking water processed by wastewater-treatment plants was specifically linked to the presence of ranitidine.

111.    Ranitidine leads to NDMA exposure in four ways: (1) formation of NDMA in the human digestive system; (2) formation of NDMA due to an enzymatic reaction throughout the human body; (3) formation of NDMA over time under normal storage conditions and which increases significantly when exposed to heat; and (4) formation of NDMA during the manufacturing process.

**Formation of NDMA in the Environment of the Human Stomach**

112.    When the ranitidine molecule is exposed to the acidic environment of the stomach, particularly when accompanied by nitrites (a chemical commonly found in heartburn-inducing foods), the Nitroso molecule (0=N) and the DMA molecule (H3C-N-CH3) break off and reform as NDMA.

113.    Manufacturer Defendants knowingly, purposely, and deliberately failed to warn Plaintiffs, patients, consumers, medical providers, the FDA, and the public of the increased risk of serious injury associated with using ranitidine, and death related to those events.

114.    Plaintiffs would not have taken ranitidine had Plaintiffs known of or been fully and adequately informed by Defendants of the true increased risks and serious dangers of taking the drugs.

115.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered serious and/or permanent injuries, adverse effects, and/or death as set forth in the individual SFCs or any other responsive discovery adduced in the respective constituent actions, which resulted in damages to Plaintiffs in sums in excess of the jurisdictional limits of the Court.

116.    Defendants' conduct was committed with knowing, reckless, conscious, wanton, willful, and deliberate disregard for the value of human life and the rights and safety of consumers, including

Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to punish and deter similar conduct in the future.

## ALLEGATIONS OF RECKLESNESS

117.    Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice. Defendants were fully aware of the safety risks of ranitidine, particularly the carcinogenic potential of ranitidine as it transforms into NDMA within the chemical environment of the human body and/or during transport and/or storage. Nonetheless, Defendants deliberately crafted their label and marketing to mislead consumers.

118.    This was not done by accident or through some justifiable negligence. Rather, Defendants knew they could profit by convincing consumers that ranitidine was harmless to humans, and that full disclosure of the true risks of ranitidine would limit the amount of money Defendants would make selling the drugs. Defendants' object was accomplished not only through a misleading label, but through a comprehensive scheme of selective misleading research and testing, false advertising, and deceptive omissions as more fully alleged throughout this pleading. Plaintiffs were denied the right to make an informed decision about whether to purchase and use ranitidine-containing products, knowing the full risks attendant to that use. Such conduct was done with conscious disregard of Plaintiffs' rights.

## COUNT I
## NEGLIGENCE

119.    The Plaintiff adopts, realleges and incorporates by reference all of the preliminary allegations in paragraphs 1 through 118 of this complaint.

120.    The products complained of, OTC Zantac, were designed, manufactured, advertised, marketed, distributed and/or sold by the Manufacturer Defendants, which Teresa Valdes used and took in her daily life.

121.    Each of the Manufacturer Defendants owed a duty to Teresa Valdes and the general public to manufacture and sell only products which were reasonably safe for their intended use, and to refrain from

selling any product which was unreasonably dangerous and which posed an unreasonable threat of bodily harm to consumers, users and/or others and to assure that OTC Zantac remained safe and free from any defects and/or unreasonable risks of danger to the consumers that would take the OTC Zantac pills.

122.    Each of the Manufacturer Defendants breached said duty by negligently making OTC Zantac, which contained NDMA and which further created additional NDMA once ingested and then, further negligently placing OTC Zantac into the stream of commerce which OTC Zantac was unreasonably dangerous and hazardous to the public, including Teresa Valdes.

123.    Teresa Valdes was exposed to the Manufacturer Defendants' products whenever she took an OTC pill. Each exposure to such OTC Zantac pill caused Teresa Valdes to be exposed to additional and accumulating NDMA which then resulted in and directly caused Teresa Valdes to suffer severe bodily injuries, specifically colorectal cancer. Each exposure to such products was harmful and caused or contributed substantially to the Teresa Valdes' injuries.  Teresa Valdes' injuries arose out of, were connected to and incidental to the design, manufacture, advertisement, marketing, distribution and/or sale by the Manufacturer Defendants' OTC Zantac products.

124.    Teresa Valdes was exposed to and did ingest OTC Zantac products which were designed, manufactured, advertised, marketed, distributed and/or sold by The Manufacturer.

125.    The damages of Teresa Valdes as alleged herein are the direct and proximate cause of the negligence of Manufacturer Defendants in that they produced, sold and otherwise placed into the stream of intrastate and interstate commerce, OTC Zantac products which Manufacturer Defendants knew, or, in the exercise of ordinary care should have known, were deleterious and highly harmful to Teresa Valdes' health and wellbeing.  The Manufacturer Defendants, prior to selling and/or distributing their OTC Zantac products to which Teresa Valdes was exposed, knew or should have known that exposure to OTC Zantac was harmful to human beings and that it could cause injuries including, but not limited to colorectal cancer. The Manufacturer Defendants also knew that their customers, of which Teresa

Valdes is included, would use and be exposed to Manufacturer Defendants' OTC Zantac products in such a way as to cause their customers, including Teresa Valdes, to ingest pills which would further expose their customers to additional amounts of NDMA after ingestion.

126.    The Manufacturer Defendants' OTC Zantac products contained defects known to, or should have been known to, the Manufacturer Defendants but were defects that were latent to the ordinary consumer, including Teresa Valdes.  The NDMA that was in the OTC Zantac pills and which was further created in the body after ingestion were latent defects at the time they were manufactured and at the time Teresa Valdes was exposed to them in that said products contained and created the NDMA carcinogen, which Manufacturer Defendants knew, or in the exercise of reasonable care should have known, would cause injuries including, but not limited to colorectal cancer.

127.    The Manufacturer Defendants knew that their OTC Zantac products would be used by their customers, such as Teresa Valdes, without inspection for defects and that any such inspection would not have advised Teresa Valdes of the fact that the Manufacturer Defendants' OTC Zantac products could cause the injuries which he suffered.  Such facts made Manufacturer Defendants' OTC Zantac products inherently and unreasonably dangerous in that Teresa Valdes was not apprised of, could not and would not contemplate the danger and/or the extent of the danger of contracting colorectal cancer and the associated injuries and complications as a result of her exposure to the OTC Zantac and NDMA.

128.    Manufacturer Defendants' OTC Zantac products, to which Teresa Valdes was exposed, were used by Teresa Valdes in the manner in which they were intended or reasonably foreseeable to Manufacturer Defendants.

129.    Manufacturer Defendants' OTC Zantac products failed to perform as safely as Teresa Valdes expected they would, in that they caused her to develop injuries including, but not limited to, colorectal cancer and the injuries alleged herein.

130.    Manufacturer Defendants engaged in the conduct described herein above, which conduct fell below a reasonable standard of care, and did so with such gross negligence as to indicate a willful and wanton disregard for the rights of others, including Teresa Valdes, and knowingly continued to manufacture and sell a product with defects known to Manufacturer Defendants as to indicate a willful and wanton disregard for the rights of others, including the plaintiff.

131.    As a direct and proximate result of the conduct of the Manufacturer Defendants, as described in the preceding paragraphs, Teresa Valdes developed colorectal cancer and the injuries alleged herein.

132.    As a direct and proximate result of the conduct of the Manufacturer Defendants, Teresa Valdes suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition.  The losses are either permanent or continuing and plaintiff, Teresa Valdes, will suffer the losses into the future.

WHEREFORE, the Plaintiff demands judgment against the Manufacturer Defendants, Boehringer Ingelheim Pharmaceuticals, Inc.; Boehringer Ingelheim Corporation; Boehringer Ingelheim USA Corporation; Pfizer Inc.; Sanofi-Aventis U.S. LLC; Sanofi US Services Inc.; GlaxoSmithKline LLC; GlaxoSmithKline Holdings (Americas) Inc., jointly and severally, for compensatory damages and the costs of this action and furthermore demands trial by jury of all issues so triable as of right.

## COUNT II
## STRICT PRODUCTS LIABILITY

133.    The plaintiff adopts, realleges and incorporates by reference all of the preliminary allegations in paragraphs 1 through 118 and 120 through 131 of this complaint.

134.    Each of the Manufacturer Defendants has been a designer, manufacturer, advertiser, distributor and/or seller of OTC Zantac products.

135.    The products complained of were OTC Zantac products designed, manufactured, advertised, distributed and/or sold by Manufacturer Defendants and used by Teresa Valdes.

136.    Each of the Manufacturer Defendants owed a duty to Teresa Valdes and the general public to manufacture and sell only products which were reasonably safe for their intended use, and to refrain from selling any product which was unreasonably dangerous and which posed an unreasonable threat of bodily harm to consumers, users and/or others and to assure that OTC Zantac remained safe and free from any defects and/or unreasonable risks of danger to the consumers that would take the OTC Zantac pills.

137.    Each of the Manufacturer Defendants breached said duty by making OTC Zantac, which contained NDMA and which further created additional NDMA once ingested and then, placing OTC Zantac into the stream of commerce which OTC Zantac was unreasonably dangerous and hazardous to the public, including Teresa Valdes.

138.    The aforesaid products were distributed, supplied, sold and/or otherwise placed into the stream of commerce, and/or caused to be placed into the stream of commerce, by Manufacturer Defendants.

139.    Teresa Valdes used Manufacturer Defendants' OTC Zantac products over many years, during which time she took OTC Zantac by ingestion, which caused her to develop colorectal cancer and the injuries alleged herein.

140.    At the time Manufacturer Defendants designed, manufactured, advertised, marketed, distributed and/or sold the aforesaid OTC Zantac products, such products were expected to, and did, reach Teresa Valdes in a condition without substantial foreseeable change from that in which such products were when within the possession of Manufacturer Defendants.

141.    The Manufacturer Defendants' OTC Zantac products were in a condition unreasonably dangerous to users such as Teresa Valdes, and said products were expected to, and did, reach Teresa Valdes without substantial foreseeable change affecting that condition.

142.   Manufacturer Defendants' OTC Zantac products were, by reason of their design, in a condition unreasonably dangerous to users such as Teresa Valdes and said products were expected to, and did, reach Teresa Valdes without substantial foreseeable change affecting that condition.

143.   Manufacturer Defendants' OTC Zantac products were unreasonably dangerous because of their design in that the risk of danger to users such as Teresa Valdes, outweighed the benefits.

144.   Manufacturer Defendants' OTC Zantac products were dangerous beyond the expectation of the ordinary user/consumer when used as intended or in a manner reasonably foreseeable by Manufacturer Defendants.

145.   Manufacturer Defendants' OTC Zantac products were unreasonably dangerous.

146.   Manufacturer Defendants knew that their OTC Zantac products would be used without inspection for defects, and by placing them on the market, represented that they would be safe.

147.   Teresa Valdes was unaware of the hazards and defects in the OTC Zantac products of Manufacturer Defendants, to-wit:  that exposure to said products would cause Teresa Valdes to develop colorectal cancer and the injuries alleged herein.

148.   As alleged above and previously incorporated herein, Manufacturer Defendants engaged in the conduct described herein above and did so with such gross negligence as to indicate a willful and wanton disregard for the rights of others, including Teresa Valdes and knowingly continued to manufacture and sell a product with defects known to Manufacturer Defendants as to indicate a willful and wanton disregard for the rights of others, including the plaintiff.

149.   As a direct and proximate result of the conduct of Manufacturer Defendants, as described in the preceding paragraphs, Teresa Valdes developed colorectal cancer and the injuries alleged herein.

150.   As a direct and proximate result of the conduct of the Manufacturer Defendants, Teresa Valdes suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing

care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff, Teresa Valdes, will suffer the losses into the future.

WHEREFORE, the Plaintiff demands judgment against the Manufacturer Defendants, Boehringer Ingelheim Pharmaceuticals, Inc.; Boehringer Ingelheim Corporation; Boehringer Ingelheim USA Corporation; Pfizer Inc.; Sanofi-Aventis U.S. LLC; Sanofi US Services Inc.; GlaxoSmithKline LLC; GlaxoSmithKline Holdings (Americas) Inc., jointly and severally, for compensatory damages and the costs of this action and furthermore demands trial by jury of all issues so triable as of right.

## COUNT III – STRICT LIABILITY
## THE RETAILER DEFENDANTS

151.   This count applies only to the Retailer Defendants CVS, Publix, Walgreens, and Walmart. The plaintiff adopts, realleges and incorporates by reference all of the preliminary allegations in paragraphs 1 through 118 and 120 through 131 and 134 through 149.

152.   Each of the Retailer Defendants owed a duty to Teresa Valdes and the general public to sell only products which were reasonably safe for their intended use, and to refrain from selling any product which was unreasonably dangerous and which posed an unreasonable threat of bodily harm to consumers, users, and/or others.

153.   Each of the Retailer Defendants breached said duty by placing OTC Zantac into the stream of commerce, which was unreasonably dangerous and hazardous to the public, including Teresa Valdes, for the following reasons:

a.   The products were in an unreasonably dangerous condition and not suitable for the uses intended and were defective;

b.   The products failed to perform as safely as an ordinary consumer would expect when used in the manner reasonably foreseeable by the Retailer Defendants;

c.   The risk of danger of the product outweighed the benefits.

154.    As a direct and proximate result of the product defects described herein, Teresa Valdes, developed injuries, including but not limited to colorectal cancer, in addition to other related physical conditions which resulted in and directly caused him to suffer severe bodily injuries and the injuries alleged herein.

155.    As a direct and proximate result of the Retailer Defendants' sale of defective OTC Zantac, Teresa Valdes, developed injuries, including but not limited to colorectal cancer, in addition to other related physical conditions which resulted in and directly caused her to suffer severe bodily injuries and the injuries alleged herein.

156.    As a direct and proximate result of the conduct of the Retailer Defendants, Teresa Valdes suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, inconvenience, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition.  The losses are either permanent or continuing and plaintiff, Teresa Valdes, will suffer the losses into the future.

WHEREFORE, the Plaintiff demands judgment against the Retailer Defendants, CVS Pharmacy, Inc..; Publix Super Markets, Inc.; Walgreen Co.; and, Walmart Inc. f/k/a Wal-Mart Stores, Inc., jointly and severally, for compensatory damages and the costs of this action and furthermore demands trial by jury of all issues so triable as of right.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable as a matter of right.

DATED: September 27, 2021.

**PARAFINCZUK WOLF**
*Attorneys for Plaintiff*
110 East Broward Boulevard
Suite 1630
Ft. Lauderdale, FL 33301
Telephone (954) 462-6700
Facsimile (954) 462-6567

By:  */s/ Austin Carr*
     JUSTIN PARAFINCZUK, ESQ.
     Board Certified Civil Trial Attorney
     Fla. Bar No. 39898
     JParafinczuk@Parawolf.com
     AUSTIN CARR, ESQ.
     Board Certified Civil Trial Attorney
     Fla. Bar No. 440833
     ACarr@Parawolf.com

and

**AYLSTOCK, WITKIN, KREIS &
OVERHOLTZ, PLLC**
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: 850-202-1010
Facsimile: 850-916-7449

By:  s/ R. Jason Richards, Esq.
R. Jason Richards
Florida Bar No. 0018207
jrichards@awkolaw.com

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                        CASE NO.:

      Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

      Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **BOEHRINGER INGELHEIM USA CORPORATION**, by serving its Registered Agent:

C T CORPORATION SYSTEM
67 BURNSIDE AVE
EAST HARTFORD, CT, 06108-3408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

      AUSTIN CARR, ESQUIRE
      Parafinczuk Wolf
      Plaintiff's attorney, whose address is:
      110 East Broward Boulevard, Suite 1630
      Fort Lauderdale, Florida 33301
      Telephone (954) 462-6700
      Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
       As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **Pfizer Inc.,** by registered agent:

     The Corporation Trust Company
     1209 Orange Street
     Wilmington, DE 19801

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
   As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

      Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

      Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **PUBLIX SUPER MARKETS, INC.,** by serving its Registered Agent:

      Corporate Creations Network, Inc.
      801 US Highway 1
      North Palm Beach, FL 33408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

      AUSTIN CARR, ESQUIRE
      Parafinczuk Wolf
      Plaintiff's attorney, whose address is:
      110 East Broward Boulevard, Suite 1630
      Fort Lauderdale, Florida 33301
      Telephone (954) 462-6700
      Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____
             As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                      CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## <u>CIVIL ACTION SUMMONS</u>

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **WALMART INC.,** by registered agent:

     C T CORPORATION SYSTEM
     1200 SOUTH PINE ISLAND ROAD
     PLANTATION, FL 33324

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700

Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                      CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.
_____/

## **CIVIL ACTION SUMMONS**

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **GlaxoSmithKline LLC**, by registered agent:

     CORPORATION SERVICE COMPANY
     501 LOUISIANA AVENUE
     BATON ROUGE, LA 70802

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
          As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.
_____/

## **CIVIL ACTION SUMMONS**

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **Walgreen Co.,** by registered agent:

     CORPORATION SERVICE COMPANY
     251 LITTLE FALLS DRIVE
     WILMINGTON, DE 19808

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
        As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.
_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **GlaxoSmithKline Holdings (Americas) Inc.**, by registered agent:

     WILMINGTON TRUST SP SERVICES, INC.
     1105 N. MARKET STREET
     SUITE 1300
     Wilmington, DE 19801

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

   DATED on _____, 2021.


       HARVEY RUVIN,
       As Clerk of the Court
       By_____
         As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                                CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon Defendant, **CVS Pharmacy Inc.**, by registered agent:

     CORPORATION TRUST CENTER
     1209 ORANGE ST
     Wilmington, DE 19801

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____
　　　　As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon Defendant, **BOEHRINGER INGELHEIM CORPORATION**, by serving its Registered Agent:

C T CORPORATION SYSTEM
67 BURNSIDE AVE
EAST HARTFORD, CT, 06108-3408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
        As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                   CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.**, by serving its Registered
Agent:

     C T CORPORATION SYSTEM
     67 BURNSIDE AVE
     EAST HARTFORD, CT, 06108-3408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____
            As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## <u>CIVIL ACTION SUMMONS</u>

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon Defendant, **Sanofi US Services Inc.**:

     55 CORPORATE DR
     BRIDGEWATER, NJ 08807-1265

**Defendant is required to serve written defenses to the Complaint or Petition on:**

        AUSTIN CARR, ESQUIRE
        Parafinczuk Wolf
        Plaintiff's attorney, whose address is:
        110 East Broward Boulevard, Suite 1630
        Fort Lauderdale, Florida 33301
        Telephone (954) 462-6700
        Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____
       As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                        CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **Sanofi-Aventis U.S. LLC.**:

     55 CORPORATE DR
     BRIDGEWATER, NJ 08807-1265

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                      CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.
_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon Defendant, **BOEHRINGER INGELHEIM USA CORPORATION**, by serving its Registered Agent:

     C T CORPORATION SYSTEM
     67 BURNSIDE AVE
     EAST HARTFORD, CT, 06108-3408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____ 9/29/2021 _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____ 310009_____
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

      Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

      Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **Pfizer Inc.,** by registered agent:

      The Corporation Trust Company
      1209 Orange Street
      Wilmington, DE 19801

**Defendant is required to serve written defenses to the Complaint or Petition on:**

      AUSTIN CARR, ESQUIRE
      Parafinczuk Wolf
      Plaintiff's attorney, whose address is:
      110 East Broward Boulevard, Suite 1630
      Fort Lauderdale, Florida 33301
      Telephone (954) 462-6700
      Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                              CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## <u>CIVIL ACTION SUMMONS</u>

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **PUBLIX SUPER MARKETS, INC.,** by serving its Registered Agent:

     Corporate Creations Network, Inc.
     801 US Highway 1
     North Palm Beach, FL 33408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

          AUSTIN CARR, ESQUIRE
          Parafinczuk Wolf
          Plaintiff's attorney, whose address is:
          110 East Broward Boulevard, Suite 1630
          Fort Lauderdale, Florida 33301
          Telephone (954) 462-6700
          Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____ 310009
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT, IN AND FOR MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                     CASE NO.:

      Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

      Defendants.
_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon Defendant, **WALMART INC.**, by registered agent:

C T CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

**Defendant is required to serve written defenses to the Complaint or Petition on:**

AUSTIN CARR, ESQUIRE
Parafinczuk Wolf
Plaintiff's attorney, whose address is:
110 East Broward Boulevard, Suite 1630
Fort Lauderdale, Florida 33301
Telephone (954) 462-6700

Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

9/29/2021

DATED on _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By _____
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **GlaxoSmithKline LLC**, by registered agent:

     CORPORATION SERVICE COMPANY
     501 LOUISIANA AVENUE
     BATON ROUGE, LA 70802

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____310009_____

As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                       CASE NO.:

      Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

      Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

      YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **Walgreen Co.,** by registered agent:

CORPORATION SERVICE COMPANY
251 LITTLE FALLS DRIVE
WILMINGTON, DE 19808

**Defendant is required to serve written defenses to the Complaint or Petition on:**

      AUSTIN CARR, ESQUIRE
      Parafinczuk Wolf
      Plaintiff's attorney, whose address is:
      110 East Broward Boulevard, Suite 1630
      Fort Lauderdale, Florida 33301
      Telephone (954) 462-6700
      Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____ 310009
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **CVS Pharmacy Inc.**, by registered agent:

     CORPORATION TRUST CENTER
     1209 ORANGE ST
     Wilmington, DE 19801

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____ 310009
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

9/29/2021

TERESA VALDES,                                  CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## <u>CIVIL ACTION SUMMONS</u>

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **BOEHRINGER INGELHEIM CORPORATION**, by serving its Registered Agent:

     C T CORPORATION SYSTEM
     67 BURNSIDE AVE
     EAST HARTFORD, CT, 06108-3408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____ 310009
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.,** by serving its Registered
Agent:

     C T CORPORATION SYSTEM
     67 BURNSIDE AVE
     EAST HARTFORD, CT, 06108-3408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____ 9/29/2021 _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____ 310009
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                              CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **GlaxoSmithKline Holdings (Americas) Inc.**, by registered agent:

     WILMINGTON TRUST SP SERVICES, INC.
     1105 N. MARKET STREET
     SUITE 1300
     Wilmington, DE 19801

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.

HARVEY RUVIN

As Clerk of the Court

By_____

As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                                    CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## <u>CIVIL ACTION SUMMONS</u>

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **Sanofi US Services Inc.**:

     55 CORPORATE DR
     BRIDGEWATER, NJ 08807-1265

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
As Deputy Clerk

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,

CASE NO.:

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **Sanofi-Aventis U.S. LLC.**:

     55 CORPORATE DR
     BRIDGEWATER, NJ 08807-1265

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700
     Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____ 9/29/2021 _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____
As Deputy Clerk

# RETURN OF SERVICE

| State of Florida | County of Miami-Dade | Circuit Court |
|---|---|---|

Case Number: 2021-021945 CA 01

Plaintiff:
**TERESA VALDES**

vs.

Defendant:
**BOEHRINGER INGELHEIM PHARMACEUTICALS, INC, ET AL**

OJF2021016819

For:
AUSTIN CARR
PARAFINCZUK WOLF SUSEN
110 E. BROWARD BLVD
STE 1630
FT. LAUDERDALE, FL 33301

Received by OJF SERVICES, INC. on the 30th day of September, 2021 at 8:57 am to be served on **PUBLIX SUPERMARKETS, INC C/O CORPORATE CREATIONS NETWORK, INC, 801 US HIGHWAY 1, NORTH PALM BEACH, FL 33408**.

I, Liz Mills, do hereby affirm that on the **30th day of September, 2021** at **11:00 am, I**:

**CORPORATE SERVED:** by delivering a true copy of the **SUMMONS AND COMPLAINT** with the date and hour of service endorsed thereon by me, to: **ALICIA YBARRA** EMPLOYEE OF CORPORATE CREATIONS NETWORK, INC at the address of: **801 US HIGHWAY 1, NORTH PALM BEACH, FL 33408** as **registered agent** for **PUBLIX SUPERMARKETS, INC C/O CORPORATE CREATIONS NETWORK, INC**, and informed said person of the contents therein, in compliance with state statutes 48.081.

I CERTIFY THAT I AM OVER THE AGE OF 18, HAVE NO INTEREST IN THE ABOVE ACTION, AND THAT I AM A CERTIFIED PROCESS SERVER, IN GOOD STANDING, IN THE JUDICIAL CIRCUIT IN WHICH THE PROCESS WAS SERVED. "UNDER PENALTY OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING (DOCUMENT) AND THAT THE FACTS STATED IN IT ARE TRUE, 92.525. ELECTRONIC SIGNATURES ARE NOW PERMITTED PURSUANT TO FLORIDA STATUTE 48.21. NOTARY ARE NOT REQUIRED PURSUANT TO F.S. 92.525(2).

**Liz Mills**
CPS #890

**OJF SERVICES, INC.**
**13727 S.W. 152nd Street**
**P.M.B. 354**
**Miami, FL 33177**
**(786) 293-5750**

Our Job Serial Number: OJF-2021016819

Copyright © 1992-2021 Database Services, Inc. - Process Server's Toolbox V8.2c

Filing # 135460646 E-Filed 09/28/2021 12:41:52 PM



IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,

    Plaintiff,

CASE NO.: 2021-21945 CA01

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

DATE 9-30 21    TIME: 11:00 AM

INITIALS: CM    ID # 890

    Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

    YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon Defendant, **PUBLIX SUPER MARKETS, INC.,** by serving its Registered Agent:

    Corporate Creations Network, Inc.
    801 US Highway 1
    North Palm Beach, FL 33408

**Defendant is required to serve written defenses to the Complaint or Petition on:**

    AUSTIN CARR, ESQUIRE
    Parafinczuk Wolf
    Plaintiff's attorney, whose address is:
    110 East Broward Boulevard, Suite 1630
    Fort Lauderdale, Florida 33301
    Telephone (954) 462-6700
    Facsimile (954) 462-6567

16899.

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____ 9/29/2021 _____, 2021.

HARVEY RUVIN,
As Clerk of the Court
By_____ 310009
As Deputy Clerk

## RETURN OF SERVICE

| | | |
|---|---|---|
| **State of Florida** | **County of Miami-Dade** | **Circuit Court** |

Case Number: 2021-021945 CA 01

Plaintiff:
**TERESA VALDES**

vs.

Defendant:
**BOEHRINGER INGELHEIM PHARMACEUTICALS, INC, ET AL**

For:
AUSTIN CARR
PARAFINCZUK WOLF SUSEN
110 E. BROWARD BLVD
STE 1630
FT. LAUDERDALE, FL 33301

OJF2021016991

Received by OJF SERVICES, INC. on the 4th day of October, 2021 at 9:05 am to be served on **WALMART, INC. C/O CT CORPORATION  SYSTEM, REGISTERED AGENT, 1200 S. PINE ISLAND ROAD, PLANTATION, FL 33324**.

I, ANDREW KARP, do hereby affirm that on the **4th day of October, 2021** at **1:05 pm, I:**

**CORPORATE SERVED:** by delivering a true copy of the **SUMMONS AND COMPLAINT** with the date and hour of service endorsed thereon by me, to: **DONNA MOCH** EMPLOYEE OF CT CORPORATION SYSTEM at the address of: **1200 S. PINE ISLAND ROAD, PLANTATION, FL 33324** as **registered agent** for **WALMART, INC. C/O CT CORPORATION SYSTEM, REGISTERED AGENT**, and informed said person of the contents therein, in compliance with state statutes 48.081.

I CERTIFY THAT I AM OVER THE AGE OF 18, HAVE NO INTEREST IN THE ABOVE ACTION, AND THAT I AM A SPECIAL PROCESS SERVER APPOINTED BY THE SHERIFF, IN GOOD STANDING, IN THE JUDICIAL CIRCUIT IN WHICH PROCESS WAS SERVED. "UNDER PENALTY OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING (DOCUMENT) AND THAT THE FACTS STATED IN IT ARE TRUE, 92.525. ELECTRONIC SIGNATURES ARE NOW PERMITTED PURSUANT TO FLORIDA STATUTE 48.21. NOTARY ARE NOT REQUIRED PURSUANT TO F.S. 92.525(2).

**ANDREW KARP**
SPS #260

**OJF SERVICES, INC.**
**13727 S.W. 152nd Street**
**P.M.B. 354**
**Miami, FL 33177**
**(786) 293-5750**

Our Job Serial Number: OJF-2021016991

Filing # 135460646 E-Filed 09/28/2021 12:41:52 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,                          CASE NO.: 2021 - 021945 CA 01

     Plaintiff,

vs.

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

     Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

     YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **WALMART INC.,** by registered agent:

     C T CORPORATION SYSTEM
     1200 SOUTH PINE ISLAND ROAD
     PLANTATION, FL 33324

**Defendant is required to serve written defenses to the Complaint or Petition on:**

     AUSTIN CARR, ESQUIRE
     Parafinczuk Wolf
     Plaintiff's attorney, whose address is:
     110 East Broward Boulevard, Suite 1630
     Fort Lauderdale, Florida 33301
     Telephone (954) 462-6700

DATE 10/4/2021   TIME 1:05 pm

INITIALS AK   ID # 260

16991

Facsimile (954) 462-6567

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____
As Deputy Clerk

## RETURN OF SERVICE

State of Florida            County of Miami-Dade          Circuit Court

Case Number: 2021-021945 CA 01

Plaintiff:
**TERESA VALDES**
vs.
Defendant:
**BOEHRINGER INGELHEIM PHARMACEUTICALS, INC, ET AL**

OJF2021016997

For: AUSTIN CARR
     PARAFINCZUK WOLF SUSEN

Received by OJF SERVICES, INC. on the 4th day of October, 2021 at 9:05 am to be served on SANOFI US SERVICES INC., 55 CORPORATE DR, BRIDGEWATER, NJ 08807. I, _____ Derek Owens _____, do hereby affirm that on the __6__ day of __OCT__, 20_21_, at _1:57_ _.m., executed service by delivering a true copy of the SUMMONS AND COMPLAINT in accordance with state statutes in the manner marked below:

( ) PUBLIC AGENCY: By serving _____ as _____ of the within-named agency.

( ) SUBSTITUTE SERVICE: By serving _____ as _____

(X) CORPORATE SERVICE: By serving _DAWN 'DOE' (REFUSED LAST NAME)_ as _MANAGING AGENT_

( ) OTHER SERVICE: As described in the Comments below by serving _____ as _____

( ) NON SERVICE: For the reason detailed in the Comments below.

COMMENTS: __56 / F / BLACK / 5'7" / 200 / BLACK__

I CERTIFY THAT I AM OVER THE AGE OF 18 AND HAVE NO INTEREST IN THE ABOVE ACTION. "UNDER PENALTY OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING (DOCUMENT) AND THAT THE FACTS STATED IN IT ARE TRUE".

_Derek Owens_  10/6/21

PROCESS SERVER #      Derek Owens
Appointed in accordance with State Statutes

OJF SERVICES, INC.
13727 S.W. 152nd Street
P.M.B. 354
Miami, FL 33177
(786) 293-5750

Our Job Serial Number: 2021016997

Filing # 135460646 E-Filed 09/28/2021 12:41:52 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

TERESA VALDES,

CASE NO.: 2021-021945 CA01

DATE: 10-6-21      TIME: 11:51 AM

Plaintiff,

vs.

INITIALS: OO      ID #: n/a

BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.;
BOEHRINGER INGELHEIM CORPORATION;
BOEHRINGER INGELHEIM USA CORPORATION;
PFIZER INC.;
SANOFI-AVENTIS U.S. LLC;
SANOFI US SERVICES INC.;
GLAXOSMITHKLINE LLC;
GLAXOSMITHKLINE HOLDINGS (AMERICAS) INC.;
CVS PHARMACY, INC..;
PUBLIX SUPER MARKETS, INC.;
WALGREEN CO.; and
WALMART INC. f/k/a WAL-MART STORES, INC.

Defendants.

_____/

## CIVIL ACTION SUMMONS

STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint in this lawsuit upon
Defendant, **Sanofi US Services Inc.**:

55 CORPORATE DR
BRIDGEWATER, NJ 08807-1265

**Defendant is required to serve written defenses to the Complaint or Petition on:**

AUSTIN CARR, ESQUIRE
Parafinczuk Wolf
Plaintiff's attorney, whose address is:
110 East Broward Boulevard, Suite 1630
Fort Lauderdale, Florida 33301
Telephone (954) 462-6700
Facsimile (954) 462-6567

i6997

Within twenty **(20)** days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of this Court, at the Miami-Dade County Courthouse, 73 W Flagler St, Miami, FL 33130, either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

DATED on _____9/29/2021_____, 2021.


HARVEY RUVIN,
As Clerk of the Court
By_____
      As Deputy Clerk